## In re MORGAN.

(District Court, S. D. Florida. July 17, 1922.)

Bankruptcy ⚕➞396(3)—"Cash surrender value" of life insurance policies not "proceeds," entitling bankrupt to exemption.

Under the Bankruptcy Act (Comp. St. §§ 9585–9656) and Rev. Gen. St. Fla. 1920, § 4977, the "cash surrender value" of life insurance policies, being no more nor less than surplus premium on life insurance, or surplus earnings on unnecessarily large premium paid for the actual insurance, is not proceeds thereof, such as would entitle a bankrupt to exemption thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cash Surrender Value; Proceeds.]

In Bankruptcy. In the matter of A. L. Morgan, bankrupt. On petition to review order of referee, refusing to set aside to bankrupt as exempt to him certain life insurance policies. Affirmed.

Cockrell & Cockrell, of Jacksonville, Fla., for petitioners.

Haley & Heintz, of Jacksonville, Fla., for excepting creditors.

CLAYTON, District Judge. This is a review of the order of the referee refusing to set aside to the bankrupt as exempted to him nine certain insurance policies. The trustee claims title to the cash surrender value of these policies upon the ground that the cash surrender value of policies of life insurance is not proceeds of life insurance, and that, if it were proceeds of life insurance, it would not be exempt to the bankrupt, under the Florida statute or under the Bankruptcy Act (Comp. St. §§ 9585–9656). The bankrupt insists that cash surrender value is proceeds of life insurance, and that as such it is exempt to him, the bankrupt. The question turns upon the interpretation of the following Florida statute:

---

⚕➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"FLORIDA REVISED GENERAL STATUTES OF 1920.

"Chapter 2 of Title 6 of Division 4—Life Insurance Policies.

"4977 (3154) *Disposition of Proceeds.* Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person or persons for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process in favor of any creditor or creditors of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor or creditors: Provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his or her executors, administrators or assigns, the proceeds of the insurance may be bequeathed by the insured to any person or persons whatsoever or for any uses in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed, and which shall be subject to disposition by last will and testament."

I am of the opinion that the cash surrender value of the life insurance policies is not "proceeds" of life insurance, nor is such cash surrender value to be treated here as life insurance. Such surrender value is no more nor less than surplus premium on life insurance, or surplus earnings on unnecessarily large premium paid for the actual insurance. Such value represents an amount of money paid on a policy over and above the amount required by the company issuing the policy to provide ordinary insurance against death of the insured from the date of issuance to the date of surrender. It is a continuing asset of the insured in the event his life insurance, and the amount thereof is ascertainable according to the terms of the insurance contract. In reality it is an investment, and not mere life insurance. If this view be sound, then obviously the surrender value cannot be considered "proceeds" of life insurance. To hold the cash surrender value of life insurance policies to be "proceeds" of life insurance, we would have to stretch the meaning of the act and the intention of the Legislature beyond its true scope and purpose.

It will be observed that this statute is headed with the words "Disposition of Proceeds," and provides that, "whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife," etc. Plainly the statute was intended to cover such cases as are specified in the act and none other, and it would be in the nature of a judicial amendment if this court were to add any other case.

It is contended, however, that the words "the proceeds thereof [of the insurance policy] shall in no case be liable to attachment, garnishment, or any legal process in favor of any creditor or creditors of the person whose life is * * * insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor or creditors," brings this case of the cash surrender value of the policy within the purview of the statute. I cannot agree to this. It seems clear that this provision last quoted must be taken in pari materia with the preceding language, which marks out or defines the case covered by the statute to be "where any person shall die in this state," etc. Nor do I think that the language of the statute following.

the word "provided" affords any support to the contention that the cash surrender value of an insurance policy is the proceeds of the insurance policy within the generally accepted meaning of "proceeds," or within the bounds of any proper legal ascertainment.

Coming to the cases which have been cited in behalf of the bankrupt, it seems to me that Holden v. Stratton, 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018, cannot be controlling in favor of the bankrupt's claim of exemption here asserted. Section 70a of the Bankruptcy Act (Comp. St. § 9654), of course, provides how the bankrupt, or the beneficiaries in the insurance policy, can protect and keep the insurance in force and effect. But here no attempt has been made to take advantage of the remedy afforded. On the contrary, it is contended that the bankrupt is entitled to the insurance policy independent of such action and by virtue of the Florida statute. It seems to me a fair conclusion to state that the Holden Case went off on the construction of the state statute there under scrutiny, and that Chief Justice White, in the opinion of the court, undertook to demonstrate that the state statute was plain and was governing in the decision of that case; in short, that the federal bankruptcy statute would not be so construed as to nullify a beneficent state statute there appealed to.

As to the cited decisions of the Supreme Court of Florida, I am forced to conclude that they do not give such satisfactory meaning to the Florida statute as to be of compelling importance. In no state do we find a statute exempting life insurance, or proceeds of life insurance, exactly like the Florida statute. Nor in any are we able to find words corresponding to the restrictive verbiage of the Florida statute—"whenever any person shall die in this state, leaving insurance on his life." The statutes of other states that undertake to exempt life insurance, or the proceeds thereof, say nothing about the death of the insured as a condition of the exemption. Of the Florida statute it seems not too much to hold that the words last quoted constitute a condition necessarily precedent to the benefit bestowed in the body of the statute. There might possibly be some doubt about allowing the exemption during the life of the insured, but this cannot be so under a statute which specifically or literally limits exemption to cases where the insured has died and the policy has thereby matured.

It appears to me that there is manifest here in the statute the intention of the Legislature to exempt proceeds of life insurance upon the maturity of the policy only; that is to say, upon the death of the insured. Construing the several parts of this statute together, so that the whole may be workable, there seems to be no doubt that the intention of the lawmakers was to exempt life insurance not otherwise than upon the death of the insured. Certainly the Legislature intended to protect the family of the insured in case of the death of the insured. It cannot be said that the Legislature had the intention of permitting a failing debtor to invest his entire assets in life insurance and claim it as exempt, a thing he might do if this statute were construed to exempt cash surrender value or loan value of life insurance policies.

Florida is generous in the allowance of exemptions. According to her law the homestead of the value of $35,000 has been exempted to this bankrupt, as well as personal property to the value of $1,000. I am not persuaded that the Legislature sought to give to a bankrupt cash surrender value on life insurance policies according to any amount that he might see fit to insure himself, as in this case, a present cash surrender value of all the nine policies of about $2,000. This is substantially the conclusion declared in the Matter of Jens, 48 Am. Bankr. Rep. 52, 273 Fed. 606, and the facts in that case seem to be in materiality like the facts here, and the Iowa statute is in some important respects like the Florida statute. In that Iowa case, in construing the statute, the court said:

"It means that upon the death of the husband the proceeds shall inure to the benefit of the wife, and in case the policy be upon the wife, it shall upon her death, inure to the benefit of the husband, and in each case that the children shall become vested with an interest therein."

Doubtless it may be said that the Florida statute is even more restrictive than the Iowa statute; but I need not go farther into the comparison, for it is submitted that the similitude is readily ascertainable by an examination of the texts of the respective enactments.

The books contain many reported cases bearing upon the question here. Let a comment on one of them suffice. That is the case of Rawls v. Penn Mutual Life Insurance Co., 253 Fed. 725, 165 C. C. A. 319. This is a case originating in this district, and the decision is that of the Circuit Court of Appeals of this circuit. In that case there were policies of life insurance on the life of Rawls. The premiums were not paid in the year 1910, and the policies lapsed. Later the company reinstated the policies, but, instead of paying cash for the premiums on reinstatement, the insured gave company certificates, acknowledging a loan from the company, and giving the company lien on the policies as security for the loan. These loans were used to pay premiums for that year. For the year 1911 the insured again defaulted in payment of premiums and of the loan, and the policies again lapsed. The company thereupon deducted from the cash surrender value of the policies an amount sufficient to pay the indebtedness of the insured to the company, and used the balance of the cash surrender value to purchase for the insured paid-up insurance, as it was provided in the policies. The paid-up term insurance expired before the death of the insured. If on the first default in 1910 the company had issued paid-up term insurance, the term would have continued beyond the date of the death of the insured. The wife of the insured, who was the beneficiary in the policies, claimed a vested right, and that when the policies lapsed in 1910, and the insured failed to exercise any option granted by the policies, that thereupon she automatically acquired paid-up term insurance. In these policies the insured reserved the right to change beneficiary. The court held that under the circumstances the beneficiary acquired only a contingent interest, subject to extinction at any time by the insured, and inter alia said:

"The cash surrender value of the policies * * * could have been claimed by the creditors of the insured had he then been in bankruptcy."

. The Court of Appeals affirmed the decision denying the claims of the plaintiff, the wife of the insured. The plaintiff's petition in the United States Supreme Court for writ of certiorari to the Circuit Court of Appeals was refused. 249 U. S. 614, 39 Sup. Ct. 388, 63 L. Ed. 802. The Florida life insurance exemption statute quoted above (section 4977 of the Rev. Gen. Stats. of Fla.) was set out in full and argued in the several briefs of the parties to the proceeding in the Circuit Court of Appeals and in the United States Supreme Court, and this statute, I think, may be said to have been in the mind of the appellate court when it was decided that the cash surrender value of the policies could be claimed by the creditors of the insured as if the matter had been in bankruptcy.

The opinion hereinbefore expressed by me is in harmony with that of Judge Call and his holding in Re D. F. & C. F. Long, Bankrupts, decided January 7, 1918, in the Southern District of Florida (not yet published). That decision seems to be the only one by any court in Florida definitely construing the Florida Act. This opinion is deserving of great consideration. Let me quote the following pertinent part:

" 'Disposition of Proceeds,' and reads in part as follows: 'Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit,' etc. The referee reached the conclusion that this section controlled the disposition of the proceeds of life insurance after the death of the insured, and I think that conclusion correct. 'It is not, it seems to me, an exemption recognized by the Bankruptcy Act and to be enforced by the bankruptcy court.' "

Accordingly, decree and order will be entered, approving the finding and conclusion of the referee.