### FORBES LITHOGRAPH MFG. CO. v. WHITE, Collector of Internal Revenue.

### No. 3155.

District Court, D. Massachusetts.

June 20, 1930.

Robert H. Holt and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge.

The first question is whether two payments of $50,000 each made by the plaintiff in 1921 and 1922 to the trustees of the Forbes Foundation were deductible from its income for these years as ordinary and necessary expense in carrying on its trade or business. Revenue Act of 1921, § 234a, 42 Stat. 254.

The facts are not in dispute and, in outline, are as follows: The plaintiff is a manufacturing concern employing about one thousand persons. Its place of business is in or near Boston. In 1921 it caused to be established the Forbes Foundation, and in that and the following year made to the Foundation the two payments in question. The Foundation was established to provide funds which could be used for the benefit of employees of the plaintiff and their dependents in case of illness or emergency. The trustees of the Foundation were appointed by the plaintiff and were removable by the plaintiff; they had power, with the approval of the plaintiff, to transfer the fund to any organization for similar purposes, or to terminate the trust and pay the remaining portion of the fund to the plaintiff. They were given very broad authority as to expenditure of the income, being free to use it for any charitable or educational purposes which in their judgment would be for the benefit of the plaintiff's employees. In the actual administration of the fund they carried out these purposes. On one occasion they made a contribution of $500 to the neighborhood Y. M. C. A.; and it is said that they felt free to assist employees in the education of their children, and in tiding over family emergencies caused by illness or accident.

The underlying purpose of the Foundation was to improve the esprit de corps of the plaintiff's employees. Trickey, the plaintiff's superintendent, testifies that it has had this effect; that the plaintiff has been benefited by the Foundation in the loyalty and good will which its employees show, and in improvement in its labor conditions compared with other similar concerns; that its employees are more loyal to it. I accept this testimony and find the facts to be as stated by the witness.

That the payments made to the Foundation passed definitely out of the control of the plaintiff is too clear for discussion. The trust was undoubtedly a separate entity not controlled by the plaintiff. It was established for bona fide business reasons, meeting in this respect the test stated in Sugarland Industries v. Commissioner, 15 B. T. A. 1265, where it was said: "We do not think the petitioner in making the expenditure made it in the role of the philanthropist, but rather as a business proposition wherein the expendi-

ture represented a consideration for a benefit flowing directly to it and as an incident of its business. As a result of the contribution the esprit de corps pervading the employees was reflected in their work."

Except for the breadth of the powers in the disposition of the income given to the trustees, the case would be covered by the decisions of the Board of Tax Appeals in Elgin National Watch Company v. Commissioner of Internal Revenue, 17 B. T. A. 339, and Hibbard et al. v. Commissioner of Internal Revenue, 5 B. T. A. 464. The power to terminate the trust by concurrent action of its officers and the trustees with the consequent return of the fund to it existed in the Elgin Watch Case and the Hibbard Case, above referred to, and was not regarded as significant for present purposes.

The large powers of the trustees in the present case enable them to spend the income of the trust for objects which would not. be deductible expenses if made by the plaintiff, e. g. the gift to the Y. M. C. A. above referred to; and the government urges that the plaintiff ought not to be permitted to accomplish by indirection what it could not do directly. I am not impressed by the argument. Such arrangements are recognized by the decisions and by the regulations as having a legitimate place in modern business. A great many of the expenditures made by them could hardly be regarded, if considered separately, as actual and necessary expenses of doing business. Such is not the test. An employer is justified, as the decisions show, in endeavoring to improve the operation of its business by making provision for the welfare of its employees; and payments made in good faith in pursuance of a plan for that purpose stand on a distinctly different footing from individual gifts or charities. The regulations provide: "Donations made by a corporation for purposes connected with the operation of its business, however, when limited to charitable institutions, hospitals, or educational institutions conducted for the benefit of its employees or their dependents, are a proper deduction as ordinary and necessary expenses. Donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business are allowable deductions from gross income." Article 562.

On all the evidence I find and rule that the payments to the Forbes Foundation were deductible expenses of the plaintiff's business.

The second question relates to an alleged loss occasioned by the surrender in 1923 of policies of life insurance, which the plaintiff had taken out in 1917 on the lives of four of its officers. The plaintiff paid in premiums on these policies, up to the time of their surrender, $40,583.50; it received as cash surrender value $22,784.44; and it deducted as a loss the difference amounting to $17,799.06. The commissioner disallowed the deduction.

The premiums paid were by the statute not deductible as business expense. The exact nature of premium payments on life insurance policies of this character is a question open to much refinement of discussion. It is not necessary to go into it, because in Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906, the principle is adopted of setting up such an account by taking the total amount paid in on one side, and the total amount received when the transaction is closed out on the other side. This rule was there applied where the policies were closed out at a profit; it is equally applicable here where the policies were closed out at a loss.

The result is that the plaintiff is entitled to judgment for both amounts claimed. The parties are to settle the figures and present an order accordingly.