## LONDON SHOE CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 116.

Circuit Court of Appeals, Second Circuit.
Dec. 9, 1935.

MANTON, Circuit Judge, dissenting.

———◆———

Javits & Javits, of New York City (Jacob K. Javits, of New York City, of counsel), for petitioner London Shoe Co., Inc.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal involves income taxes of London Shoe Company, Inc., for the year

1931. and the sum in controversy is $3,-115.44.

In 1934 that company insured the life of Marcus Weingarten, one of its principal officers, for $100,000. Under the terms of the policy the taxpayer was designated as the beneficiary, and a gross annual premium of $9,097 was required to be paid so long as Weingarten was alive unless the policy was to determine other than by reason of the death of the insured. Between 1924 and 1931, the taxpayer paid for premiums the aggregate sum of $63,679 and received as dividends $13,117, leaving $50,562 as the net amount expended for the insurance. The premiums were not deducted as an expense during any of the taxable years. The policy was surrendered and canceled in 1931 and the taxpayer received $24,600 as the cash surrender value of the policy. In its income tax return for that year it claimed a deductible loss of $25,962 based upon the difference between $50,562, the net cost of the insurance, and the cash surrender value of $24,600. In assessing the tax for the year 1931, the Commissioner rejected the deduction claimed. Upon an appeal by the taxpayer to the Board of Tax Appeals, the Board likewise disallowed the deduction and because of this determined a deficiency in taxes of $3,713.48.

A life insurance policy ordinarily combines investment with insurance protection. The decision in Lovell v. St. Louis Mutual Life Ins. Co., 111 U.S. 264, 274, 4 S.Ct. 390, 395, 28 L.Ed. 423, where the contract was terminated by the act of the company and the policyholder demanded a return of all premiums paid, with interest, less the amount of his premium note, illustrates this double feature. The court there said: "But we do not think that he is entitled to a return of the full amount of his premiums paid. He had the benefit of insurance upon his life for five years, and the value of that insurance should be deducted from the aggregate amount of his payments. In other words, the amount to which the complainant is entitled is what is called and known in the life insurance business as the value of his policy at the time it was surrendered, with interest, less the amount of his premium note, which should be surrendered and canceled."

In the earlier years of a policy, the annual life premium is in excess of the amount required to pay the current cost of insurance protection and such excess is retained by the insurance company as a reserve and increased at compound interest at an agreed rate for the purpose of making good the deficiency in later years when the annual premium is no longer sufficient to pay for the actual cost of insurance. The fund accumulated out of the excess premiums is known as the "reserve" on the policy and represents the investment portion of the premium payments held for the benefit of the policyholder. In case the policy is surrendered or allowed to lapse, the holder may receive the reserve held for his benefit known as the "cash surrender value," which represents the equity of the insured in the policy above the amounts paid for protection. The nature of a "surrender value" was described by the Florida District Court in Re Morgan, 282 F. 650, substantially as above. In order to determine whether there was any loss in the present case, the taxpayer would have to show what portion of the premiums was attributable to investments and whether the cash surrender value was less than such portion. It may be assumed, in the absence of any proof to the contrary, that the cash surrender corresponds with the amount of the reserve; that is to say, with the excess of premiums over what was required for protection.

It is argued that in Lucas v. Alexander, 279 U.S. 573, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R: 906, the Supreme Court applied another rule and held where, upon the surrender of the policies, the amount received was in excess of the premiums paid, the difference was taxable gain within the provisions of section 202 of the Revenue Act of 1918 (40 Stat. 1060), which provided:

"(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property * * * the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date."

In other words, it is said that the difference between the amount received as a surrender value and the premiums paid is the measure of the tax "against the profits and income derived from any source whatever." We think, however,

that such was not the effect of the decision. It is true that Justice Stone at one place in his opinion (279 U.S. 573, at page 576, 49 S.Ct. 426, 427, 73 L.Ed. 851, 61 A.L.R. 906) said: "By the expenditure of $78,100 in premiums, the insured secured a return of $120,797, resulting in an economic and realized money gain to him of $42,697." But he neither said, nor did the court hold, that the difference was a taxable gain. In that case the policies were taken out in 1899, the premiums had been fully paid in 1908, and in 1919 the policyholder was given the option of receiving on each policy the sum of $50,000 plus the cash dividend then apportioned by the company. The question of the cost of the capital asset was not before the court, but only the fair market value as of March 1, 1913, and the gain realized after that date. It was held that the gain was the difference between the cash surrender value of the policy on March 1, 1913, plus dividends then collectible and the cash surrender value plus dividends received when the policy was surrendered. The court was not dealing with the cost of the policy but its value on March 1, 1913.

It was the failure to take into account the two factors of investment and insurance protection which are inherent in the ordinary life policy that explains the decision in Forbes Lithograph Mfg. Co. v. White (D.C.) 42 F.(2d) 287, with which, with all respect, we must differ. The precise question we have to determine was before the Circuit Court of Appeals of the Third Circuit in Century Wood Preserving Co. v. Commissioner of Internal Revenue, 69 F.(2d) 967. That court declined to follow Forbes Lithograph Mfg. Co. v. White, supra, and held that a corporate taxpayer was not entitled to deduct as a business loss the difference between the cash surrender value of a life insurance policy and the amount of premiums paid. The holding of the Third Circuit that cost is approximately reflected in the cash surrender value of a policy, and consequently that there could be no loss though the premiums exceeded the value, seems to us correct and applicable to the facts before us.

Section 22 (b) (2) of the Revenue Act of 1928 (26 U.S.C.A. § 22 note) exempts from taxable income: "Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income."

It is argued that, because the foregoing subdivision provides that gain shall be ascertained by taking the total amount paid in on one side from the total amount received upon the closing out of the transaction, a similar rule ought to be applied where there is a loss. But there is no special statutory provision for computing deductible losses in cases where the premiums paid for a life insurance policy exceed the amount of the reserve or the cash surrender value. The subdivision dealing with the computation of taxable gains somewhat favors the taxpayer at the expense of the government, because it allows the deduction of the full amount of the premiums paid from the total amount received, though the premiums are in excess of what would normally be required for insurance protection, and thus lessens the amount of the taxable gain. It does not necessarily result that such statutory indulgence will be given the taxpayer in computing losses, especially where there is no statutory provision that contains language that will justify it.

Section 113 (a) of the Act of 1928 (26 U.S.C.A. § 113 note) contains a general clause for computing loss which states the law applicable to the present situation. It provides that: "The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property."

Here the cost of the proceeds which the taxpayer received upon the surrender of the policy seems to have been approximately the amount of excess premiums set apart from year to year as a reserve. Section 22 (b) (2), which is a specific statute dealing with gains has nothing to do with the mode of calculating the losses that may be deducted when the cash surrender value of a life insurance policy is paid. They are governed by the general provisions of section 23 (f, g), 26 U.S.C.A. § 23 (f, g) and note, and section 113 (a), 26 U.S.C.A. §

113 note. Losses, if any, would be represented by the amount by which the premiums so far as they are paid toward the reserve exceed the cash surrender value of the policy.

We can see no escape from the conclusion reached by the Board that no loss was established in this case, for the reason that the cost was approximately reflected in the cash surrender value. The portion of the premiums not used to build up the reserve was paid to obtain the insurance protection which was for many years afforded. Century Wood Preserving Co. v. Commissioner of Internal Revenue (C.C.A.) 69 F.(2d) 967; Keystone Consolidated Publishing Co. v. Commissioner of Internal Revenue, 26 B.T.A. 1210; Appeal of Standard Brewing Co., 6 B.T.A. 980.

The order of the Board of Tax Appeals is affirmed.

MANTON, Circuit Judge (dissenting).

In 1924 petitioner insured the life of one of its officers for $100,000. The petitioner was designated as the beneficiary and paid the gross annual premiums of $9,097 for seven years, or a total of $63,679. Of this sum $13,117 was received back as dividends, leaving as the sum paid for insurance $50,562. The policy was surrendered and canceled in 1931 and the petitioners received its surrender value $24,600.

The petitioner claims a loss in 1931 of the difference between the net premiums paid and the cash surrender value in the sum of $25,962. The Board of Tax Appeals sustained the disallowance of this loss by the Commissioner. The Revenue Act of 1928, May 29, 1928, c. 852, § 23 (f), 45 Stat. 799, 26 U.S.C.A. § 2023 (f), see 26 U.S.C.A. § 23 (f) and note, provides for the allowance of deductions in computing net income: "(f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

Upon cancellation of the life insurance policy, there was a loss sustained. It was a transaction purely for business and its closing out constituted an actual loss within section 23 (f) to the petitioner of the difference between the cash surrender value of the policy and the premiums paid thereon. Section 22 (b) (2) of the Revenue Act of 1928, 26 U.S.C.A. § 2022 (b) (2), see 26 U.S.C.A. § 22 note, lists, under the headings of items not to be included in gross income and to be exempt from taxation, "Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income."

Thus it is definitely stated in the statute that where there is a taxable gain from the closing of a policy, the aggregate premiums paid measure the cost of the amount received. Nothing in this section of the act or elsewhere in the taxing statutes refutes the applicability of this principle for the determination of the cost of a policy where loss is sustained upon its surrender.

In Lucas v. Alexander, 279 U.S. 573, 49 S.Ct. 426, 428, 73 L.Ed. 851, 61 A.L.R. 906, the question involved two paid-up deferred dividend life insurance policies which were closed out by the insured at a net gain over the total premium expenditures. The Commissioner took the difference between the amount received by the insured and the total net premium expenditures made by him and taxed the difference as taxable income. The policy had antedated March 1, 1913, and the case was governed by section 202 (1) of the Revenue Act of 1918 (40 Stat. 1060), which provided that for the purpose of ascertaining gain or loss from disposition of property, the basis should be, in the case of property acquired prior to March 1, 1913, the fair market value of such property as of that date. The Supreme Court adopted the principle of setting up the amount by taking the total amount paid in premiums and the total amount received when the transaction was closed and in that manner arriving at the total gain to the taxpayer. It adopted this principle independently of any statutory provision for arriving at the amount of taxable gain such as is now to be found in section 22 (b) (2) of the Revenue Act of 1928. The court said: "In view of the provisions of section 213 (b) (2) of the act, see Regulations 45 (1920) art. 72 (b), ex-

empting from taxation the return of premiums on the maturity of the policy, it [the government] concedes that the taxable gain of the insured may be taken at the amount, fixed by the commissioner, by which the proceeds of the policies exceeded $78,100, the total premiums paid."

No criticism was made of the use of such a principle in ascertaining the total gain to the taxpayer. The purpose of ascertaining the value of the policies as of March 1, 1913, was simply to measure that part of the total gain which had accrued after the constitutional enactment of any statute taxing income and thus to arrive at the gain which, under the facts of that case, could be taxed as income.

In Forbes Lithograph Mfg. Co. v. White, 42 F.(2d) 287 (D.C.Mass.), the court, ruling on the precise question involved here, considered itself bound by Lucas v. Alexander, supra. It set up the account by taking the total amount paid on the one side and the total amount received when the transaction was closed on the other side, and allowed the beneficiary paying the premiums to deduct the difference as a loss. Century Wood Preserving Co. v. Com'r of Internal Revenue, 69 F.(2d) 967 (C.C.A. 3), held that to the extent by which the premiums paid exceeded the surrender value of the policy they constituted earned payments for insurance and that the other part of the premiums represented an investment built up as a reserve until the policy matured or was surrendered, and upon surrender of the policy, the holder received as a surrender value the equivalent cost of his investment and therefore suffered no loss. When net gain is measured by the Board of Tax Appeals, it arrives at the amount by taking the difference between the amounts received and the aggregate premiums paid basing it upon section 22 (b) (2) of the Revenue Act of 1928, 26 U.S.C.A. § 2022 (b) (2), see 26 U.S.C.A. § 22 note. But nothing prevents the Board from the use of the same measure when confronted with an insurance situation involving a loss to the taxpayer. In Appeal of Standard Brewing Co., 6 B.T.A. 980, and Keystone Consolidated Publishing Co. v. Commissioner of Internal Revenue, 26 B.T.A. 1210, the Board refused to allow a loss based upon the difference between the amounts received and the aggregate premiums paid, allowing only that part which it considered going into a reserve built up by the insurance company and refusing to allow the balance of the premiums paid, on the ground that such balance represented annual costs of insurance protection. If such a rule prevails, the determination of gain would also involve the elimination of part of the premiums paid as representing the actual cost of insurance and the net gain would thus be increased pro tanto. As yet the Board has never advanced this method of accounting in cases involving gains and no logical explanation demands it where the taxpayer has actually received less than he has paid out by way of premiums.

The prevailing opinion says that part of the premium is an investment built up as a reserve until the policies matured; if it is surrendered, the holder is entitled to the cash surrender value from the insurer or the return of the equivalent of his investment after the cost of annual protection is deducted from the premiums. This does not reveal the surrender value as it actually exists under the contracts of insurance companies. The cash surrender value offered to the insured upon his surrendering his policy is differently described. Vance on Insurance (2d Ed. 1930) p. 55, says: "The amount of this surrender value offered is based upon the reserve value of the policy at the time of surrender, and it is plain that the insurer can well afford to pay to the insured the entire reserve value of his policy in consideration of his surrendering it for cancellation; but, in as much as insurance companies desire to discourage the surrender of policies as far as they can equitably do so, the surrender value fixed upon a policy is usually set at a considerably lower figure than that which would be established by its reserve value."

Moreover, the contract of insurance which the petitioner obtained was fixed in terms and values at the time it was executed. For the time it paid the premiums, the insurance company promised to pay $100,000 at any time during the term of the policy if the insured died. It gave an option to take a cash surrender value to be exercised by the petitioner. In case of the death of the insured, whether within six months or six years, the petitioners would have been compensated to the extent of $100,000.

The amount paid in premiums varied with the life of the insured. There was no separation of the premiums agreed upon such as might be regarded by the insured as one part paid for protection only and the balance as a reserve investment. The method of calculation found useful by the insurance companies in determining reserves and cost of insurance was no affair of the petitioner and no part of its agreement.

The decision should be reversed.