LUCAS, COLLECTOR OF INTERNAL REVENUE, *v.*
ALEXANDER ET AL.

No. 481.  Argued April 12, 1929.—Decided May 20, 1929.

*Assistant Attorney General Willebrandt,* with whom *Attorney General Mitchell,* and *Messrs. J. Louis Monarch* and *Edwin G. Davis* were on the brief, for petitioner.

*Mr. Elwood Hamilton,* with whom *Mr. George V. Triplett* was on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on certiorari, granted November 19, 1928, 278 U. S. 594, to review a judgment of the Court of Appeals for the Sixth Circuit, 27 F. (2d) 237, affirming a judgment of the District Court for Western Kentucky, 21 F. (2d) 68, allowing recovery from the Collector of Inter-

nal Revenue of federal income taxes alleged to have been illegally exacted.

On May 19, 1899, respondents' testator procured two life insurance policies for $50,000 each upon his own life and payable to his estate. On May 19, 1908, they became fully paid up policies, upon the payment of the last of ten annual premiums aggregating, for both policies, $78,100. Each policy stipulated that in the event of death within ten years the amount payable should be $50,000 and, from the eleventh to the twentieth year inclusive, an annually increasing amount ranging from $50,700 in the eleventh year to $72,150 in the twentieth year. The death benefit on each policy during the year ending May 19, 1913, was $59,300. The policies participated in the surplus of the company and " dividends " properly allocable to each were set aside or ascertainable on its books each year, but were payable only at the end of the tontine period of twenty years and only to holders of policies still in force at that time.

The insured was given an option at the end of the period of receiving on each policy the sum of $50,000 " and in addition the cash dividend then apportioned by the company." The insured elected to exercise this option May 19, 1919, receiving as proceeds of the two policies $120,797, representing $100,000 face value plus $20,797 dividends. The gain to him over his total premium expenditure was thus $42,697. The Commissioner assessed this amount as taxable income under the Revenue Act of 1918, c. 18, 40 Stat. 1057.

Both the district court and the court of appeals thought that, under § 202a(1) of the Act, only so much of the proceeds of the policies as exceeded their value on March 1, 1913, was subject to tax. They found that the amount provisionally set aside by the company as surplus accum-

ulations applicable to the two policies on that date was $13,600, and that it was then evident that the rate of accumulation, although not certain, would probably be greater during the later years of the tontine period than before March 1, 1913. Even at the same rate, the accumulation at the end of the period would amount to $19,428.57. Both courts, therefore, concluded that the insured might reasonably have anticipated that the policies would have been worth on their maturity date, if then in force, their face value plus the anticipated accumulations, or a total for both policies of $119,428.57. Since, under the sliding scale, the death benefits would have been even proportionately larger had the insured died before the end of the period, they decided that the combined value of the policies on March 1, 1913, was the smaller amount discounted at the rate of 4% compounded annually to that date, or $93,587.81. The taxable gain on the policies, accordingly, was taken to be the difference between this amount and the actual proceeds of the policies, or $27,209.19. A recovery was allowed of the difference between the tax as assessed and that as computed on the gain after March 1, 1913, so ascertained.

As respondents did not ask certiorari, we may disregard their argument that the judgment below was erroneous in that the proceeds of an insurance policy paid to the insured are not taxable income except as the determination of that question may be involved in passing upon the assignments of error of petitioner. See *Federal Trade Commission* v. *Pacific Paper Ass'n.*, 273 U. S. 52, 66.

By the expenditure of $78,100 in premiums, the insured secured a return of $120,797, resulting in an economic and realized money gain to him of $42,697. The question of liability for the tax on this gain is different from that mooted by counsel, but not decided, in *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189, 194, which

was whether insurance upon the life of a corporate officer, paid at his death to the corporation, could be constitutionally subjected to a tax on income. Here the amount paid was not a death benefit or in the nature of a gift to a beneficiary and was in no sense an indemnity for, or repayment of, an economic loss suffered by the insured, but was a profit or gain upon his premium investment, and would seem to be plainly embraced within the provisions of § 213 taxing " gains or profits and income derived from any source whatever " and not exempted as such from tax by any other provision of the Act. See *Penn. Mutual Co.* v. *Lederer,* 252 U. S. 523, 532, 534; *Eisner* v. *Macomber,* 252 U. S. 189, 207; *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, 518.

. But of this total gain received by the insured, a part is attributable to and accrued during the period before the effective date of the Sixteenth Amendment (February 25, 1913), and of the first law taxing the income of individuals (March 1, 1913), and hence, for income tax purposes, must be deemed an accretion to capital not taxable by the income tax acts enacted under the Sixteenth Amendment. See *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, 334; cf. *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179; *Lynch* v. *Turrish,* 247 U. S. 221. Whether or not such accretions may be constitutionally subjected to tax, we have no occasion to decide. The present Act, at least, does not attempt it. But the question presented necessarily involves a determination of what part of the total gain received by the taxpayer accrued to him after March 1, 1913. In answering it, provisions of the taxing statute enacted as aids in arriving at the answer must be construed with an eye to possible constitutional limitations so as to avoid doubts as to its validity. *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 407, 408; *United States* v. *Standard Brewery,* 251 U. S. 210, 220; *Texas* v. *Eastern Texas R. R.*

*Co.*, 258 U. S. 204, 217; *Bratton* v. *Chandler*, 260 U. S. 110, 114; *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375, 390.

Section 202 of the Revenue Act of 1918 provides:

"(A) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be:

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date."

The Government insists that the policies, being non-assignable except to persons having an insurable interest in the life of the insured, had no market price and their combined value as of March 1, 1913 did not exceed their loan or cash surrender value on that date, which alone could be realized on them, of $74,600, Regulations 45 (1920) Art. 87, and that any greater value assigned to them as of that date must be rejected as contingent and speculative. But in view of the provisions of § 213b(2) of the Act, see Regulations 45 (1920) Art. 72(b), exempting from taxation the return of premiums on the maturity of the policy, it concedes that the taxable gain of the insured may be taken at the amount, fixed by the commissioner, by which the proceeds of the policies exceeded $78,100, the total premiums paid.

Plainly, in the present case, the $42,697 gained over premium cost of the two policies, which accrued to the taxpayer through a period of twenty years, did not all accrue in the six years following March 1, 1913. If the value on that date, for the purpose of ascertaining taxable gain, was greater than the total premium expenditure which had been completed more than four years before, there is no reasonable basis for determining the taxable gain which accrued after March 1, 1913, by deducting from the total amount received the total premium payments.

Nor can we accept the contention of the Government that the value of the policies on March 1, 1913, did not

exceed their loan value as of that date. The purpose of ascertaining the value of the taxpayer's property on March 1, 1913 is, as § 202 states, to measure that part of his total gain which has arisen or accrued after the enactment of any of the statutes taxing income and thus to arrive at his gain which may be taxed as income. *Lynch* v. *Turrish, supra.* Value as of that date may be disregarded unless it serves that purpose. *United States* v. *Flannery,* 268 U. S. 98; *Goodrich* v. *Edwards,* 255 U. S. 527; *Walsh* v. *Brewster,* 255 U. S. 536.

Under the statute, market price of the taxpayer's property on that date, where ascertainable, may be resorted to as generally a sufficiently definite and trustworthy gauge of the gain which has later accrued. But where the property has no market value, the statute must be interpreted in the light of its purpose to ascertain taxable gains accruing since March 1, 1913. Hence, in such a case, its fair value on the critical date is not necessarily what might have been realized upon it by a forced liquidation by accepting the unfavorable loan or cash surrender value. Having in mind the purpose of the statute, we think it must be taken rather to be that part of the amount actually realized by the taxpayer which, by the use of appropriate accounting methods, can fairly be said to have accrued before March 1, 1913—its value then as compared with the value in fact later realized by the taxpayer taken as a standard.

In applying § 202a(1) to an insurance policy having no market value, we are not required either by circumstances or any positive provision of statute to determine its value on March 1, 1913, by making a prediction as of that time based upon an estimate of future possibilities, as is the case in valuing for purposes of inheritance tax an interest of uncertain duration passing at the death of the testator. See *Ithaca Trust Co.* v. *United States, ante,* p. 151.

There the value as of the date of death is the very thing taxed and can usually be determined only by speculation as to future events. Here, 1913 value is at most merely a method of allocating a known income to the periods in which it actually accrued. It is never necessary to speculate, as did the court below, as to what might later be realized from his property by the taxpayer, nor as to what might have been realized if, on March 1, 1913, he had made some forced disposition of the property which would have precluded any taxable gain. For the necessity of ascertaining value as of March 1, 1913, can never arise until some later date when income has been produced by converting the property into money or money's worth and the amount actually realized is known, and then, as we have said, only for the purpose of apportioning the total gain which has accrued between the periods before and after March 1, 1913.

It is familiar knowledge that the source of dividend accumulations upon insurance policies is interest upon investments of the company and savings effected from estimated future expenses and from death payments covered by premiums, with appropriate " loadings " to give a margin of safety, which the policy holders have paid. In accordance with the usual practice of life insurance companies, under the system of accounting employed by the insurer in the present case, the amount of reserve set aside by the company to meet its policy liability and dividend accumulations provisionally apportioned to each policy was ascertained or ascertainable on the books of the company at the end of each year. During the policy year which included March 1, 1913, the insurance reserve liability thus ascertained on each of the present policies was $40,600 and the dividend accumulation on each, which both courts below found had accrued on March 1, 1913, was $6,800, making a total of reserve and accumulations applicable to each policy of $47,400. These items with subsequent annual additions totaled at the maturity of

each policy, for the former $50,000 and for the latter $10,398.50 which, taken together, made up the total payment received by the taxpayer on each policy. They constitute a complete record and determination of the actual economic gain annually accruing upon the policies which was ultimately realized by the taxpayer and they provide an adequate basis for ascertaining the proportion of the total value realized which had accrued on March 1, 1913. The sum of the insurance reserve liability and the dividend accumulations provisionally apportioned to the two policies on March 1, 1913, their accrued value on that date, was $94,800. As that valuation is larger than that found by either of the lower courts and is supported by reliable data, we may, in the absence of other evidence, accept it as sufficiently establishing that the value found below was not more than that required to be ascertained by the statute and so did not prejudice the rights of petitioner. It is unnecessary to consider the question mooted whether upon other evidence, not here presented, a larger value as of March 1, 1913, might have been found.

The court below, by discounting the total estimated value of the policies at their maturity at 4%, arrived at a rough approximation of their accrued value on that date. This method, however, did not ascertain that value or the taxable gain with accuracy, since it was based on an assumed instead of the actual value of the policies at maturity. It discounted the assumed value at a flat rate of interest instead of at that actually earned, and it left out of account savings from estimated expenses and death losses which, as well as actual interest earned, were taken into account in determining dividend accumulations annually ascertained and credited to the policies on the books of the company. But, as the accuracy of the computation is not questioned here, and as it gave a result of which petitioner cannot complain, the judgment will be

*Affirmed.*