## MITCHELL v. COMMISSIONER OF IN-TERNAL REVENUE.

### No. 223.

Circuit Court of Appeals, Second Circuit.
April 13, 1931.

Simpson, Thacher & Bartlett, of New York City (Whitney North Seymour and Courtland Kelsey, both of New York City, of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Hayner Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and William E. Davis, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner-appellant in his income tax return sought to take a loss upon certain securities purchased in 1911. These securities consisted of option warrants whereby the holder had the right within ten years from August 1, 1911, to purchase common stock of the American Power & Light Company. He never exercised this option, which expired on August 1, 1921, and thereby became valueless. In the taxpayer's return for 1921 he deducted a loss on the warrants based on a valuation as of March 1, 1913, but the Commissioner assessed the loss on the basis of the cost of the warrants in 1911, when they were worth less than on March 1, 1913, and determined a tax deficiency for the difference accordingly. The Board of Tax Appeals affirmed the Commissioner. They found that the value of the warrants at cost was $5.94 each, while the bid price for them on March 1, 1913, was $13 each. The question before us is whether the loss should be figured on the basis of cost or of value on March 1, 1913.

The provisions of the Revenue Act of 1921 which must be considered are the following:

"Sec. 202 * * *

"(b) The basis for ascertaining the * * * loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a). * * *"

The basis provided by subdivision (a) was "the cost of such property."

"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * *

"(6) Losses sustained during the taxable year of property not connected with the trade or business * * * if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise. Losses allowed under paragraphs (4), (5), and (6) of this subdivision shall be deducted as of the taxable year in which sustained unless, in order to clearly reflect the income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period. In case of losses arising from destruction of or damage to property, where the property so destroyed

or damaged was acquired before March 1, 1913, the deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913." 42 Stat. 239.

It was held by the Board of Tax Appeals that, when the warrants expired on August 1, 1921, there was a "disposition" of them within the meaning of section 202 (a), supra. Undoubtedly if this were so the basis for the determination of the loss would be cost, for section 202(a) in so many words makes "the cost of such property" the basis. But the expiration of the warrants was not in our opinion a "disposition" of them. The words "sale or disposition" would seem to relate to a voluntary sale or transfer by the taxpayer and perhaps also to a sale or transfer imposed upon him, but not to a mere depreciation in or cessation of value. The loss here was not one incurred in a "sale or other disposition of property" under section 202(b), but in a "transaction entered into for profit, though not connected with * * * trade or business" such as is described in section 214 (a) (5). It is, however, said that, if the case falls within section 214 (a) (5), no basis is found in that section for determining the amount, and that the word "loss" must therefore be taken to describe the difference between what the property cost the taxpayer and what it finally yielded to him.

Section 214 (a) (6) provides that, "in case of losses arising from destruction of or damage to property" acquired before March 1, 1913, "the deduction shall be computed upon the basis of its fair market price or value" as of that date. We must first determine whether the lapse of the warrants which rendered them valueless on August 1, 1921, can be regarded as a loss "arising from destruction or damage to property."

It may be said that the only losses which are properly described by the words "arising from destruction or damage to property" are those occurring through "fires, storms, shipwreck, or other casualty" mentioned in section 214 (a) (6). But certainly losses arising from "theft" which are grouped in (6) in the same clause with those arising from "fires, storms, shipwreck or other casualty" must be computed under the provisions of 214 (a) (6), although "theft" no more involves a destruction of property in a physical sense than does the lapse of an option to subscribe for stock. The second clause of section 214 (a) (6) deals with paragraphs (4) and (5) as well as (6) in respect to the year in which deductions shall be taken, and

is therefore to that extent applicable to the other classes of deductions for losses covered by the section. If we treat the last clause of (6) as relating only to a physical "destruction," we are not only leaving all the items of loss in (4) and (5) as well as losses arising from "theft" mentioned in (6) without any specified basis for computation, but we are making an irrational distinction between the methods to be used in computing losses of different kinds. The basis for computation specified in section 214(a) is the "fair market price or value as of March 1, 1913." Subdivision (6) of section 214(a) consists of a single paragraph which deals in its second clause with the deductions allowed for losses under (4) and (5) as well as (6), and prescribes the basis for computation in all three subdivisions. The word "destruction," in our opinion, includes not only physical destruction, but losses from the other causes enumerated.

Because section 214 (a) (6) provided that "losses arising from destruction of * * * property * * * shall be computed upon the basis of its fair market price or value as of March 1, 1913," the taxpayer says that the Board of Tax Appeals ought to have allowed a deduction of $13 per warrant, seeing that $13 was the bid price for the warrants on March 1, 1913. But this contention overlooks the fact that the Supreme Court has repeatedly construed clauses of the income tax statutes providing that gains or losses shall be computed on the basis of the value as of March 1, 1913, in a different way.

While section 214(a), subdivisions (4), (5), and (6), of the Revenue Act of 1921 (42 Stat. 239, 240), has not been dealt with by the courts, the clause in (6) setting forth the basis on which losses are to be computed is substantially identical with section 202 (a) of the Act of 1918 (40 Stat. 1060). The Act of 1918, section 202(a), provided that, for the purpose of ascertaining the loss sustained from the sale or other disposition of property acquired before March 1, 1913, the basis should be the value of such property on that date, while section 214(a) of the Act of 1918, contained no separate provisions for the basis to be used in determining the losses under that section. But the Act of 1921 was changed in this respect by substituting as a basis for ascertaining the loss in case of sales the cost of the property and by carrying into section 214 (a) (6) the clause of section 202(a) of the Act of 1918 that made the value on March 1, 1913, the basis.

The clause in section 202(a) of the Act of 1918 was construed by the Supreme Court in United States v. Flannery, 268 U. S. 98, 45 S. Ct. 420, ·69 L. Ed. 865; McCaughn v. Ludington, 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868, and Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 72 L. Ed. 714. In all three decisions that clause was held to allow no more than actual loss to the taxpayer as a deduction. Justice Sanford said, in the Flannery Case, at page 103 of 268 U. S., 45 S. Ct. 420, 422, that:

"* * * The provision in reference to the market value on March 1, 1913, was applicable only where there was such an actual gain or loss, that is * * * this provision was merely a limitation upon the amount of the actual gain or loss that would otherwise have been taxable or deductible."

In other words, the value on March 1, 1913, is only taken as a basis for computing losses where the cost has been greater than the value on that date. In such case the loss is computed with reference to the value on March 1, 1913. The statute has been interpreted in a similar way in computing taxable gains. Where the cost has been less than the value on March 1, 1913, the gain has been measured by the March 1 value. Where it has been greater, the gain has been measured by original cost. Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758; Walsh v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762; Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906. Revenue Acts have never attempted to tax gains accrued prior to March 1, 1913, even if the imposition of such a tax may be thought constitutional. Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed 851, 61 A. L. R. 906. These rules as to gains and losses on sales were carried into the Act of 1921 by section 202 (a) (b) 1, 2, and 3.

The allowance of anything beyond an actual loss would be most unlikely in the absence of a clear legislative mandate. The provision in section 214 (a) (6) that losses are to be computed upon the basis of the "fair market price or value as of March 1, 1913," should be construed, like other similar clauses, as merely a limitation upon losses that would otherwise have been deductible. While Congress can, of course, allow such deductions as it pleases and limit them as it will, it cannot reasonably be thought to have intended in any case to have allowed more than actual losses. Nichols v. Smith (C. C. A.) 35 F.(2d) 938; Lock, Moore & Co., Ltd., 7 B.

T. A. 1008; Appeal of Jackson County State Bank, 2 B. T. A. 1100.

· Inasmuch as the value of the warrants on March 1, 1913, was equal to or exceeded cost, cost under the decisions we have referred to must be taken as the basis for computing losses. So it is immaterial in the particular circumstances whether section 202(b) or section 214(a), subdivision (6), be taken as defining the basis for computation, for in either event cost must furnish the basis. The value on March 1, 1913, is only important to set a limit to the deductible loss, if cost exceeded the value on that date.

■ The Commissioner and the Board of Tax Appeals fixed cost at $5.94 per warrant. As cost is the basis for computation, it only remains for us to determine whether the finding that cost was $5.94 was justified by the evidence. The taxpayer made some sales of warrants in 1911 at $5 and $6, but they were made to persons in whom he was particularly interested. He testified that he knew "there were sales being made at higher prices" and that in making sales "he was not actuated by a desire to make a gain or suffer any loss." He likewise produced a witness who testified that the witness had made inquiries of a number of brokers and of Electric Bond & Share Company which was interested in the American Power & Light Company, and had been unable to ascertain anything authoritative regarding any actual sales of or quotations for the warrants during the period between 1911 and March 1, 1913. This witness also testified that there were no quotations for the warrants in the Commercial and Financial Chronicle prior to the latter date. On March 1, 1913, there was a market for the warrants with a quotation of $13 bid and $15 asked. The stock of the American Power & Light Company, to subscribe for which the warrants were issued, was quoted during the last five months of 1911, and the quotations were very close to the quotation for that stock on March 1, 1913, and at times were higher. From this fact, it is argued that the rights to subscribe for the stock, which ordinarily follow in a general way the rise and fall of the stock itself, must have been worth as much when issued to the taxpayer in August, 1911, as on March 1, 1913; i. e., $13 bid, $15 asked.

·The taxpayer's privilege consisted of the right to take and pay for units, each consisting of a $100 par value of ten-year 6 per cent. note of the American Power & Light Company and an option warrant entitling the holder within ten years from August 1, 1911,

to purchase one share of common stock of that company at par. After paying $100 each for these units, he sold a number of the notes in September and November, 1911, and in January, 1912, to Electric Bond & Share Company, at prices from $94.70 to $96.50. It is clear that the value of the warrants to subscribe for the stock cannot be determined by deducting the average price received for the notes from the $100 paid for the units. Such a method would ignore the fact that the taxpayer was securing as a stockholder an option to subscribe for stock which would ordinarily be worth considerably more than the cost, else there would be little inducement to the stockholders to exercise their privileges. While the price at which he sold the warrants to friends is an unsatisfactory criterion of value, yet it is worth something as evidence of value particularly when the taxpayer, though testifying that he knew "sales were being made at higher prices," neither disclosed the prices nor explained why he was unable to do this.

The fact that the market for the stock was about the same in 1911 as in 1913 throws some doubt on the finding of the Commissioner that the warrants for which $13 was bid in 1913 were only worth $5.94 in 1911. Yet in 1913 speculation in cheap securities, or other causes, may have occasioned a large relative increase in the price of these warrants as compared with a stock which paid no dividend and cost five times as much as the warrants even at $13.

In view of the failure of the taxpayer to prove any of the 1911 sales which he says were made at higher prices than his own, or to produce witnesses to testify as to "over the counter" sales which may have taken place during that period, we do not feel justified in finding that the value of the warrants when issued must have equaled their value on March 1, 1913, or in holding that the Board had no basis for fixing a cost of $5.94 per warrant.

The order of the Board of Tax Appeals is affirmed.