104

UNITED STATES v. ONE 1935 FORD
STANDARD COACH AUTOMOBILE,
MOTOR NO. 18–179962.

No. 4338.

District Court, W. D. Tennessee.

Dec. 17, 1935.

Joseph M. Bearman, Asst. U. S. Atty., of Memphis, Tenn.

Rudolph Johnson and William Goodman, both of Memphis, Tenn., for defendant.

MARTIN, District Judge.

The petitioner, C. I. T. Corporation, assignee of a certain automobile purchase-money promissory note secured under a conditional sales contract reserving title in the seller, files its petition to rescind an order of forfeiture to the United States and to reclaim one 1935 Ford standard coach automobile, described in the foregoing caption.

The order in question was entered on September 10, 1935, on motion of the United States attorney, upon an ex parte showing pursuant to an act approved May 27, 1930, §§ 9, 10, 46 Stat. 430 (U.S.C. title 27, Supp. 7, § 42).

It appears from statements made in open court by attorneys for both parties that through a misunderstanding of counsel the entry of said order of forfeiture was not resisted at the time of its presentation to the court; and it is agreed between them that the petition of the C. I. T. Corporation for remission of the forfeiture now may be heard.

The decision upon the merits of this petition turns upon an interpretation of title 2, section 204 (b), of Public Act of Congress No. 347, 74th Congress (S 3336), approved August 27, 1935, entitled: "An Act to repeal Titles I and II of the National Prohibition Act, to reenact certain provisions of Title II Thereof, to amend or repeal various liquor laws, and for other purposes." 49 Stat. 872.

This section (27 U.S.C.A. § 40a (b) provides: "In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his in-

terest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

### Findings of Fact.

Oral testimony and stipulated proof has been adduced at the hearing of this petition, from which it appears, and the court finds:

That before the petitioner, C. I. T. Corporation, as assignee, acquired on May 4, 1935, title from the Hull-Dobbs-Price Company to the promissory note and conditional sales contract executed by J. W. Thornton, secured by the automobile in controversy, an investigation was made by petitioner of the reputation and general credit of J. W. Thornton. This investigation consisted in inquiry by two young ladies, serving in the capacity of credit investigators for the petitioner, of an automobile note discount company which had previously financed the purchase of a car for the said J. W. Thornton; by inquiry of the Leo Kahn Furniture Company and the Scott Grocery Company, both of which mercantile companies had sold Thornton goods; and by inquiry of the Central Sand & Gravel Company, employer of Thornton at the time of inquiry. The investigation report from these sources gave Thornton a good reputation as to character, and a good reputation for paying his debts.

Lee McCourt, general manager of Central Sand & Gravel Company, employer of Thornton, made oath that during the period of approximately three years in which Thornton was employed, intermittently, by his company for a total of at least nine months' service, the witness was in daily contact with Thornton; and that the reputation of Thornton in no manner brands him as a bootlegger or a person connected with liquor traffic.

It further appeared from the sworn statement of Lee McCourt that Thornton was employed with the Illinois Central Railroad for a number of years before coming to work for the Central Sand & Gravel Company.

C. E. Wilson, branch manager of the petitioner, testified that the investigation made by his company revealed nothing whatever casting any suspicion that Thornton was a law violator or bootlegger.

At the hearing, the government produced as witnesses Ed. Corbett, agent in charge, alcohol tax unit, at Memphis; Fitzhugh Lee, constable; Joe Hendrix and George Becker, deputy sheriffs on the staff of the sheriff of Shelby county, Tenn.— all of whom testified that Thornton is notoriously known as a bootlegger.

The witness Ed. Corbett testified that Thornton had been arrested recently on charges of violating the internal revenue laws, and is now at liberty on bond; and that said arrest was made subsequent to acquisition by petitioner of its interest in the automobile in controversy.

Aubrey C. Edmondson, now a defendant in this court, testified that on the date he was arrested for violating the internal revenue laws he was riding in the car with J. W. Thornton, and that the automobile which was seized is the car now in controversy. He testified further that he had been working for and with J. W. Thornton in transporting whisky and operating a still for approximately four months prior to his arrest in June of 1935, and that he had known Thornton for approximately three years; that Thornton was a bootlegger, and that such was his general reputation; that during the entire time the witness worked for J. W. Thornton the two occupied the same room as sleeping quarters.

It appeared from the testimony of witnesses introduced by the government that there is no record in the federal or the state courts of this county of the conviction of Thornton for violation of the liquor laws or bootlegging. Deputy Sheriff Becker stated that Thornton had been in jail on several occasions, but not on liquor charges.

The agent in charge of the alcohol tax unit testified that no one from the C. I. T. Corporation, or any one else, had called him to inquire concerning the reputation of Thornton as a liquor law violator, and that, had any one called him, he would have in-

formed the inquirer that Thornton had such reputation.

It·was stipulated between counsel, and agreed to be treated as evidence at the hearing, that Will Lee, chief of police of the city of Memphis, would testify (1) that no one from the C. I. T. Corporation ever called him to inquire as to the character of Thornton; (2) that he does not know Thornton; (z) that he never heard of Thornton's being engaged in bootlegging or in the violation of the laws of the United States or of Tennessee relating to liquor; and (4) that, if the C. I. T. Corporation, or its representative, had called him on May 4, 1935, he would have made answer to any inquiry that the said Thornton had no reputation for violating the laws of the United States or any state relating to liquor.

Richard Anderson testified that he is the office manager of the local branch of Commercial Credit ·Company, and that in January, 1935, the Commercial Credit Company purchased a promissory note and conditional sales contract executed by J. W. Thornton; that, presumably, an investigation was made at that time regarding Thornton as a moral and credit risk, but that the credit investigation records had been misplaced and were not available; that, however, as a result of such investigation, Thornton was graded No. 1, which is the highest rating that a maker of a conditional sales contract can receive in the office of the Commercial Credit Company; that all bootleggers, whether excellent credit risks or bad credit risks, are graded No. 3, and that, if the investigation had indicated that Thornton was connected with any bootlegging activity, he would have received a credit rating of No. 3.

Mr. Leibermann, manager of Memphis Retail Credit Association, testified that he had made several investigations of the character and reputation of J. W. Thornton, the first being in the year 1932, another in 1933, and the third in 1934; none of which investigations indicated that Thornton was connected with bootlegging activity or violation of the liquor laws. He testified further that it is ·the business of his company to keep as accurate lists as possible of all bootleggers, and that a diligent search of these records failed to reveal the name of J. W. Thornton; that an extra effort is made by his company to ascertain the bootlegging reputation of any purchaser of an automobile, when an inquiry is made regarding such purchase by any finance company; that in 1933 such an inquiry was made for a finance company, an investigation concerning Thornton's bootlegging reputation ensued, with the result that no facts were developed indicating that Thornton had such reputation. Mr. Leibermann testified, further, that the last report was of December, 1935, and that the record continued to show that Thornton had no reputation as a bootlegger, although at the time of the report Thornton was under bond and had been apprehended for internal revenue law violation.

### Conclusions of Law.

■ From a consideration of the applicability of section 204 (b), supra, in its relation to the foregoing facts, it is manifest that the C. I. T. Corporation, claimant for remission, has undoubtedly complied with subdivisions 1 and 2 thereof.

■ Counsel for the government urges earnestly that subdivision 3 exacts of the petitioner, as a claimant whose rights arise out of and subject to a contract or agreement of purchase of notes, a complete compliance with the terms of said section; and that it is not enough for claimant to show that it has exercised reasonable care in its investigation of the reputation of Thornton. The government contends that·the requirement of subdivision 3, with respect to inquiry of the designated county, city, and federal officials as to the character and financial standing of Thornton in the instant case, is mandatory.

In the opinion of this court, such interpretation is too rigid; and, if made to apply to the exclusion of a consideration of subdivisions 1 and 2 in connection therewith, subdivision 3 would be an unconstitutional provision, violative of the Fourth Amendment to the Constitution, securing the citizen against unreasonable seizure of his effects.

. The business of financing the purchase by individuals of automobiles, through the medium · of discounting purchase-money notes secured by conditional sales agreements; has become a widespread activity in this country. Through such financing, individuals· of moderate means have been able to purchase, use, and enjoy automobiles, which would have been beyond their means to ·acquire except for such financing. The salutary aid given to enforcement of the internal revenue laws by the enactments of Congress authorizing the

seizure of automobiles found engaged in unlawful liquor traffic must not be construed to have the effect of requiring unreasonable and generally unnecessary inquiry to be made of designated public officials, as to whether each individual in every instant case purchasing an automobile with the aid of an automobile purchase-money note finance company is a bootlegger or internal revenue law violator. To the average purchaser of an automobile, it would be, to say the least, insulting should a finance company inquire of the chief of police, the sheriff, and the local chief of the alcohol tax unit whether such person is stigmatized as a bootlegger or liquor law violator.

Should there be any reasonable suspicion to put an automobile finance company upon sensible inquiry, it would unquestionably be the duty of the finance company to make inquiry of the chief of police and other designated officials as to the reputation of the purchaser of the automobile. But, where a reasonable credit inquiry, such as an ordinarily prudent person should be expected to make, fails to reveal any fact or suspicious circumstance as to odious reputation of the purchaser of an automobile, no arbitrary requirement can be properly placed upon an automobile finance company to call up the chief of police and other law enforcing officials before acquiring lien title to an automobile. Such drastic requirement upon no probable suspicion, followed by seizure and confiscation of the property for failure to comply, appears so violative of reason and justice as to render the requirement void under the Fourth Amendment.

This decision must not be construed as meaning that subdivision 3 is a nullity in its applicability to a proper case. When reasonable inquiry has cast a suspicion upon the character of a purchaser of an automobile, the provisions of subdivision 3 should apply with full force and effect. This is as far as a court should go in a reasonable and just interpretation of section 204 (b), supra; but the court should proceed thus far to uphold the act of Congress.

"When the validity of an Act of Congress is drawn in question, and, even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598; citing: Panama R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L.Ed. 748; Missouri Pacific R. Co. v. Boone, 270 U.S. 466, 471, 472, 46 S.Ct. 341, 70 L.Ed. 688; Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906.

In the instant case, it is the opinion of the court that there has been a substantial compliance by the petitioner with the reasonable requirements of the said statute. The stipulated testimony of the chief of police of the city of Memphis would be sufficient to sustain the practicability and soundness of this view. It was stipulated that he would testify that, had the petitioner made inquiry of him prior to the purchase of the automobile notes in question, the said official would have reported to petitioner that Thornton had no reputation for violating the laws of the United States or any state relating to liquor.

An order will be entered in compliance with this opinion, vacating the ex parte order and directing the return of the seized automobile to the petitioner, C. I. T. Corporation.