MOSES COHEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98164.   Promulgated June 12, 1941.

*Thomas C. Lavery, Esq.,* for the petitioner.
*Paul A. Sebastian, Esq.,* for the respondent.

### OPINION.

BLACK: This proceeding involves the determination by the respondent of a deficiency in income tax for the calendar year 1936 in the amount of $308.86, all of which is in controversy. The petitioner alleges that the determination of the Commissioner is based upon the following error:

The action of the respondent in disallowing a deduction claimed by the petitioner in his return for the calendar year 1936, representing the loss sustained by the petitioner upon the discharge of liens upon insurance policies.

The facts were stipulated, except certain documents offered in evidence at the hearing. We adopt such stipulation and find the facts to be as stipulated, including the joint exhibits. Such facts may be summarized as follows:

Petitioner is an individual, with an office in Cincinnati, Ohio. Within the time prescribed by law, he filed an income tax return for the calendar year 1936 with the collector of internal revenue for the first district of Ohio.

On June 28, 1922, the Missouri State Life Insurance Co., sometimes referred to as the Missouri Co., issued to petitioner two 20-payment life annual dividend plan insurance policies in the amount of $25,000 each. The policy numbers were 398289 and 398724. The annual premium on each policy was $1,383.75. Beginning on June 28, 1924, petitioner was credited with annual dividends on each policy which were applied toward the reduction of premiums. Each policy had a cash surrender value and provided for loan privileges.

Early in 1932, due to rumors as to the financial condition of the Missouri Co., petitioner borrowed $8,446 upon each policy.

On August 28, 1933, pursuant to a decree of court, the Superintendent of the Insurance Department of the State of Missouri acquired title to the assets of the Missouri Co. and on September 7, 1933, made a contract with the General American Life Insurance Co., sometimes referred to as the American, under which the American purchased the assets and assumed the outstanding policies of the Missouri Co. The appraised value of the assets was less than the reserves required by the law of Missouri, and a lien was placed against all policies, including those of the petitioner, equal to 50 percent of the terminal reserve of each policy as established in the accounts of the Missouri Co. as of September 1, 1933. The lien bore interest to be paid on each policy anniversary date, and could be paid at any time, but until discharged, was to be deducted from any payment made by American under the provisions of the policy. The lien on each of the petitioner's policies was $1,778.43. From September 1, 1933, the annual cost of each policy to the petitioner was $1,979.43, of which $1,383.75 was premium; $88.92 was 5 percent interest on the lien; and $506.76 was 6 percent interest on the loan.

Effective September 28, 1936, petitioner and the American entered into two new contracts of insurance. The details of the changes which took place in the policies and the settlement which occurred between petitioner and American at the time the two old policies were surrendered and new ones issued in lieu thereof, are contained in a letter in the record from American, and are as follows:

Effective September 28, 1936, Policy 398289 was continued as $25,000 extended insurance for a period of 10 years to expire September 28, 1946. The premiums paid, dividends credited and the adjustments made in placing this policy on the extended insurance basis were as follows:

*Policy 398289*

| | |
|---|---:|
| 14 Annual Premiums at $1,383.75 (for the period from June 28, 1932 to June 28, 1936 | $19,372.50 |
| 1 Quarterly premium to cover period from June 28, 1936 to September 28, 1936 | 366.75 |
| | $19,739.25 |
| Annual dividends credited to policy from June 28, 1924 to June 28 1935, both dates inclusive. (Applied toward reduction of premiums) | $2,887.00 |
| Net outlay for premiums (from June 28, 1922 to September 28, 1936) | $16,852.25 |

\*\*\*

| | |
|---|---:|
| Cash Value of policy on September 28, 1936 | $11,843.75 |

Policy lien and interest to September 28, 1936_____ $1, 800. 26
Policy loan (adjusted for unearned interest) on Septem-
    ber 28, 1936_____ 8, 065. 93

Total indebtedness on September 28, 1936_____ $9, 866. 19
Paid in cash by insured to reduce indebtedness as of Sep-
    tember 28, 1936_____ 5, 350. 43 .

                                                            $4, 515. 76
Annual dividend credited to policy on June 28, 1936 (used
    to reduce indebtedness)_____ 133. 50

                                                            $4, 382. 26
Credit from Policy 398724 used to further reduce indebt-
    edness _____ 234. 76

Net indebtedness deducted from cash value_____ $4, 147. 50

Net value used to purchase $25,000 extended insurance from Septem-
    ber 28, 1936, to expire September 28, 1946_____ $7, 696. 25

(No dividends have been credited to this policy since it was placed· on the
extended insurance basis.)

*       *       *       *       *       *       *

Effective September 28, 1936, Policy 398724 was changed to $10,000 insurance
on the Ordinary Life Non-participating plan, with register date June 28, 1930.
The premiums, dividends and the adjustments made in changing the policy
to $10,000 on the Ordinary Life Non-participating plan were as follows:

*Policy 398724*

14 Annual premiums at $1,383.75 for the period from June 28, 1922 to
    June 28, 1936_____ $19, 372. 50
1 Quarterly premium for the period from June 28, 1936, to September
    28, 1936_____ 366. 75

                                                               $19, 739. 25
Annual dividends credited to policy from June 28, 1924 to June 28,
    1935, both dates inclusive (applied toward reduction of 'pre-
    miums) _____ 2, 887. 00

Net outlay for premiums (from June 28, 1922 to September 28, 1936)__ $16, 852. 25
                              ***
Cash Value of original policy on September 28, 1936_____ 11, 843. 75
Cash Value as of September 28, 1936, of new policy charged in chang-
    ing policy to $10,000 insurance on the Ordinary Life Non-partici-
    pating plan, with register date June 28, 1930_____ 1, 452. 50

Credit from difference in cash values, released by the change_____ $10, 391. 25

Policy lien with interest to September 28, 1936_____ $1, 800. 26
Policy loan (adjusted for unearned interest) on September 28, 1936_____ 8, 065. 93
_____
Indebtedness deducted from credit_____ $9, 866. 19

Semi-annual premium due September 28, 1936 on new      $525. 06
 $10,000 Ordinary Life Non-participating policy_____ $280. 70
Quarterly premium due March 28, 1937 on new policy_____ 143. 10
_____
Portion of credit used to pay premiums to June 28, 1937 on
 new policy_____ $423. 80
_____
                   $101. 26
Annual dividend credited to original policy on June 28, 1936_____ 133. 50
_____
Credit transferred to reduce the indebtedness on Policy 398289 before
 that policy was placed on extended insurance_____ $234. 76

In addition to the $423.80 credit applied as above to pay premiums on the new Ordinary Life policy from September 28, 1936, to June 28, 1937, an annual premium of $550.40 was paid as of June 28, 1937, to carry the new policy in force to June 28, 1938, to which date premiums are now paid. The present policy is non-participating.

 *   *   *   *   *   *   *

The policy liens ($1,800.26 for each policy) repaid as shown in the above schedules, represented the original policies' proportional shares in the deficit in the assets of the Missouri State Life Insurance Company, which became insolvent. Under the terms of our Purchase Agreement dated September 7, 1933, if the original policies had been kept in force on premium paying bases, they would have shared in distributions of profits to be applied from time to time to reduce policy liens. However, Policy 398289 was placed on the extended insurance basis and will not share in any lien reductions distributed after September 28, 1936, nor will the new Ordinary Life Non-participating policy issued in the change of policy number 398724 share in any lien reductions distributed after September 28, 1936.

Following the changes petitioner deducted in his income tax return for 1936 as "Losses on Insurance Policies" $3,600.52, being the portion of cash surrender values used to discharge the two liens of $1,778.43 each and interest on each lien of $21.83. The respondent disallowed the deduction claimed, as not being an allowable deduction under section 23 (e) of the Revenue Act of 1936, but increased petitioner's deduction for interest paid during the year by the amount of $43.66.

Section 23 (e) of the Revenue Act of 1936 provides as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

 In computing net income there shall be allowed as deductions:

 *   *   *   *   *   *   *

 (e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
  (1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

Although no brief has been filed on behalf of the respondent, he apparently concedes that petitioner sustained a loss of $3,556.86 in 1936. At the hearing counsel for the respondent, after briefly stating the facts of the case, said:

It is Respondent's position that that loss was nothing more than a personal loss. It was not a loss incurred in business, casualty, or from a transaction entered into for profit.

Petitioner does not contend that the loss was incurred in any trade or business, or from casualty, but contends that it was incurred in a transaction entered into for profit and is, therefore, deductible under section 23 (e) (2), *supra*.

The word "transaction" in the term "any transaction entered into for profit" comprehends all phases of the taxpayer's relation to the subject matter through which the loss was incurred, *Terry* v. *United States*, 10 Fed. Supp. 183; and the word "profit" comprehends all income flowing from the tenure of property such as rent, interest, etc., as well as gains realized from its sale or other disposition, *Weir* v. *Commissioner*, 109 Fed. (2d) 996; certiorari denied, 310 U. S. 637. The profit motive must be the prime thing. *Lihme* v. *Anderson*, 18 Fed. Supp. 566; *Paine* v. *Commissioner*, 102 Fed. (2d) 110. Cf. *Evans* v. *Rothensies*, 114 Fed. (2d) 958. The determination of each case, however, must depend upon its particular facts. *Hines* v. *Commissioner*, 58 Fed. (2d) 29. Cf. *Heiner* v. *Tindle*, 276 U. S. 582.

It seems to be well settled that a participating life insurance policy, other than perhaps term insurance which involves insurance only, combines investment with insurance protection; and that the investment feature is represented in the capital asset built up in the form of the cash surrender value of the policy. *E. A. Armstrong*, 1 B. T. A. 296; *Standard Brewing Co.*, 6 B. T. A. 980; *Lucas* v. *Alexander*, 279 U. S. 573; *Gustave Anderson*, 26 B. T. A. 1208; *Keystone Consolidated Publishing Co.*, 26 B. T. A. 1210; *Century Wood Preserving Co.* v. *Commissioner*, 69 Fed. (2d) 967; *London Shoe Co.* v. *Commissioner*, 80 Fed. (2d) 230; certiorari denied, 298 U. S. 663; Paul, Studies in Federal Taxation, 3d Series, pp. 403–409; Vance on Insurance, 2d Ed., p. 26.

In *Standard Brewing Co.*, *supra*, the taxpayer took out a policy of insurance on the lives of certain of its officers. In the years 1916 to 1919, inclusive, it paid premiums on the policy in the amount of $11,178.50, which it capitalized on its books and in the year 1920 it surrendered the policy for $6,647, the amount of its cash surrender value. In its income and excess profits tax return for the year 1920, the petitioner deducted as a loss the difference between the total

amount of premiums paid and the cash surrender value of the policy. We denied the claimed loss, saying in our report:

* * * To the extent that the premiums paid by the petitioner created in it a right to a surrender value, they constituted a capital investment. To the extent they exceeded the surrender value, they constituted payment for earned insurance and were current expenses. * * * The surrender value of the policy was the measure of the investment and upon the surrender there was no capital lost.

To the same effect was *Keystone Consolidated Publishing Co.*, *supra*, and *London Shoe Co.* v. *Commissioner*, *supra*.

If, in the instant case, when petitioner surrendered the two policies in question, he had been paid their full cash surrender value of $11,-843.75 each, he would have had no loss. He would have been receiving back the full amount of his capital investment and the remainder of the premiums which he had paid had gone to pay the cost of carrying his life insurance. However, as we have already pointed out, he did not receive back the full cash surrender values of his policies but had $1,778.43 deducted from each to pay the liens which had been fixed against the policies by reason of the insolvency of Missouri Life Insurance Co. This, we think, represented a realized loss of that much of his capital investment, and, as we view it, the only question for us to decide is whether or not that loss resulted from a transaction which was entered into for profit.

The cash surrender value of a life insurance policy in some ways, we think, resembles an ordinary savings account. It is improved by interest—that is to say, the reserve on the policy which is the source of the cash surrender and loan value of the policy is improved by interest from year to year. If one deposited money in a bank at interest, we do not think it could be contended successfully that he did not enter into a transaction for profit. Cf. *Weir* v. *Commissioner*, *supra*; *George M. Cohan*, 11 B. T. A. 743 (issue 5) ; modified, remanded and affirmed on other issues, 39 Fed. (2d) 540.

So, in dealing with the question we have here to decide, it should be remembered that reserves on policies such as we have in the instant case are earning interest and the policyholder participates in the benefit of this interest. Also such policies provide that the policy shall participate annually in the divisible surplus of the company and usually the policyholder may elect to have these dividends used in one of several ways, such as to have them (1) paid to himself in cash, (2) used to reduce his policy premiums, (3) used to purchase additional life insurance, and (4) used to accumulate with the insurance company at interest. However used, these dividends are a real benefit to the policyholder and, together with the other benefits we have mentioned above, we think qualify the transaction, in respect to its

investment features, as one entered into for profit within the meaning of the statute.

Therefore, in the instant proceeding we do not think we should overlook or fail to take into account the dual factors of investment and insurance protection which are inherent in the policies here involved. That portion of the premiums paid for mere insurance protection is of course a personal expense and as such is not deductible. Sec. 24 (a) (1), Revenue Act of 1936. That portion of the premiums paid by reason of the investment feature of the contract is a capital expenditure and as such is not deductible. Sec. 24 (a) (2). Petitioner is not contending for the deduction of any of the premiums paid. He contends that he lost a part of his capital investment, namely, $3,556.86 of the cash surrender value of the policies, and that such loss is deductible under section 23 (e) (2), *supra*.

For reasons above stated, we sustain this contention.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

DISNEY, dissenting: I can not agree with the conclusion of the majority opinion that the petitioner has shown a loss in a transaction entered into for profit. The petitioner in seeking a deduction must not only point to a statute authorizing it, but affirmatively show that he comes within its terms. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, 440. "A transaction entered into or completed on a basis other than that of an ordinary business transaction does not qualify as one entered into for profit within the meaning of the revenue law", *Evans* v. *Rothensies*, 114 Fed. (2d) 958, denying loss on transfer of stock for an annuity because the transfer was made on favorable terms as a member of the transferor's family. In my opinion the petitioner has failed to show that the insurance contracts herein constituted such ordinary business transactions, or that considerations of family did not control. On brief the petitioner states his motive thus:

When the petitioner insured his life in 1922 he undoubtedly had a dual motive: (1) to make provision for his family or dependents in the event of his untimely death; and (2) to accumulate an estate by the investment of his savings in insurance, a form of investment which would yield income and at the same time make the cash value of his policies readily available to him at any time. * * *

Tacitly, he admits that the primary purpose was provision for his family. The profit motive must be primary as the majority opinion concedes, citing cases, to which I add *Donald McDonald, Jr., Administrator*, 28 B. T. A. 64. I am unable to see how it can be said that profit was the prime motive here.

*Industrial Trust Co.* v. *Broderick*, 94 Fed. (2d) 927; certiorari denied, 304 U. S. 572, involved the question whether deductible loss was sustained by a decedent in the last taxable period prior to his death by reason of the fact that payments received by him upon annuities were less than the cost thereof. The petitioner contended that the purchases of annuities were transactions entered into for profit. The court said:

Neither do we think Mr. Parks at the time he entered into the contracts in question did so with the view of making a profit. As above said, what he was seeking was security during the term of his life, not profit, and received what he contracted for.

I think there is, so far as here pertinent, no distinction between the annuities in the cited case and the insurance policies in this. The cash surrender provisions in the insurance policies herein seem to me to be matters of security during life, equally with the payments under the annuities in the *Broderick* case; they do not render the life insurance policies profit transactions, and are clearly subordinate to the prime purpose of protection.

The provision of section 23 (e) as to transactions entered into for profit seems to have had its inception in section 5 of the Revenue Act of 1916, which provides for a deduction under subsection (a) Fifth, as follows:

In transactions entered into for profit but not connected with his business or trade, the losses actually sustained therein during the year to an amount not exceeding the profits arising therefrom.

The language as to "an amount not exceeding the profits arising therefrom" was added by the Senate. It is apparent from this language that the profits entering into the transaction must be financial profits, capable of comparison with, and of being subtracted from, financial losses sustained in similar transactions. The fact that this limitation is not continued in later acts is no indication that the word "profits" does not continue to connote financial profit as distinguished from any satisfaction or economic security which the purchaser of the life insurance policy may obtain for himself or his beneficiaries.

It is not sufficient, in my opinion, to compare the cash surrender feature of petitioner's insurance contracts with a savings account, even if we assume that a mere savings account is a transaction entered into for profit; for that is not the primary feature of the contracts. Under the particular situation here, it appears that profit upon amounts invested was impossible; certainly the contrary is not shown, for cash surrender values presuppose fully paid premiums, and here the dividends were applied upon premiums and reduced the amount paid, leaving no showing of possibility of profit thereon, in cash surrender values. When actual cost of insurance is deducted from

payments, premiums already reduced by dividends, the possibility of profit seems, to say the least, so remote as to be no basis for application of section 23 (e). A realistic approach to the question of investment and profit also seems to raise the query as to whether any low rates of interest added by the insurance company to payments made should not be compared with ordinary interest rates paid for use of money. Such a comparison demonstrates, it seems to me, that the object of the insurance policy is not profit, but protection, and at the most merely safety. The prime motive here, as I see it, was not "acquisition of money beyond the amount expended" or "pecuniary gain" under the definition of profit transaction laid down in *Goldsborough* v. *Burnet*, 46 Fed. (2d) 432. I respectfully dissent.