**FRAMINGHAM COUNTRY CLUB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 85–4771–MA.**

United States District Court, D. Massachusetts.

April 24, 1987.

John M. Dokas, Boston, Mass., for plaintiff.

Asst. U.S. Atty. Joseph Ackerstein, Paul D. Barker, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff in this action seeks a refund of income taxes and interest paid in the amount of $12,549.55. The parties have stipulated to the facts in this case and have each submitted a memorandum of law. The defendant has also submitted a reply memorandum. The facts relevant to the

disposition of this matter, gleaned from the stipulation of facts, are as follows.

## I.

The plaintiff, Framingham Country Club (the "Club"), is a Massachusetts corporation organized to provide for the social and recreational purposes of its members and to encourage athletic and outdoor activities. The facilities of the Club include a golf course, a clubhouse and a dining room, locker rooms, tennis courts and a swimming pool. Most of the Club's revenues are derived from the annual dues of members, but other revenues are derived from the dining room, a bar, greens fees from guests, golf cart rentals, interest on bank accounts, and revenues from cigarette machines. The plaintiff is, and has been for all relevant taxable years, an organization exempt from federal income tax under Section 501(c)(7) of the Internal Revenue Code of 1954.[1]

In the 1950's, the plaintiff purchased approximately 100 acres of real estate for the purpose of expanding its golf course, and building two new holes, currently the 13th and 14th holes of the golf course. These holes were in fact constructed in the 1960's. In 1968, an additional 20 acres of real estate was purchased for $80,000 and was used, in part, for a 15th hole. Of the 100 acres purchased in the 1950's, only about 30 acres were needed for the construction of the 13th and 14th holes, and of the additional 20 acres purchased in 1968, only two or three acres were needed for the 15th hole. By 1978, the Club's Board of Governors decided to sell the unused real estate, consisting of about 60 acres. On March 12, 1981, the plaintiff entered into an Option Agreement with Merchco

Investment Corporation ("Merchco") through which the plaintiff granted Merchco a six-month renewable option to purchase approximately 60 acres of land for a price of $1.6 million. The consideration for the initial six-month option was $25,000 and was paid to the plaintiff upon execution of the Option Agreement.

The Option Agreement provided that the initial term of the option was for six months commencing on March 12, 1981, and could be extended for another six-month period upon notice at least 30 days prior to the end of the original option and payment of an additional $25,000. Merchco exercised this provision of the agreement, and thus a total of $50,000 was paid to the plaintiff for the option pursuant to the Option Agreement.

In February 1982, the plaintiff and Merchco executed an amendment to the Option Agreement. The option to purchase the 60 acres of land was extended to March 11, 1982 with a provision that the option could be extended for an additional period of six months from the expiration date of March 11, 1982 to September 11, 1982. The option was not exercised by Merchco and was allowed to lapse on or about September 11, 1982, after the final extension. The plaintiff eventually sold the land to a real estate developer in January 1986 for $1.1 million.

On March 14, 1985, the Internal Revenue Service ("IRS") mailed a statutory notice of deficiency to the plaintiff for $10,027 with respect to the plaintiff's income tax for the taxable year 1982. In computing the deficiency in the plaintiff's 1982 income tax, the IRS determined that the $50,000 option fee paid by Merchco was unrelated business income to the plaintiff in 1982 subject to the unrelated business income tax.[2] On

---

**1.** Since the years at suit in the present case antedate the Tax Reform Act of 1986 and the redesignation of the amended "Internal Revenue Code of 1954" as the "Internal Revenue Code of 1986", the parties have briefed this matter with reference to the provisions of the Internal Revenue Code of 1954.

**2.** Section 511 of the Internal Revenue Code imposes a tax upon the unrelated business taxable income as defined in Section 512 of any organization exempt under Section 501(c)(7). Sec-

tions 512(a)(3)(A) and (B) provide, in part, as follows:

> SEC. 512. UNRELATED BUSINESS TAXABLE INCOME
> (a) *Definition.* For purposes of this title—
> ....
> (3) *Special rules application to organizations described in Section 501(c)(7) or (9).*—
> (A) General Rule.—In the case of an organization described in section 501(c)(7) or (9), the term "unrelated business taxable income" means the gross income (excluding any ex-

or about May 1, 1985, the plaintiff paid the full amount of the assessment of income tax plus interest for 1982 in the amount of $12,549.55. The plaintiff filed an amended Form 990–T return with the Internal Revenue Service Center at Andover, Massachusetts on June 6, 1985, claiming a refund of income tax paid for 1982 in the amount of $10,027 plus interest in the amount of $2,522.55. No action was taken by the Internal Revenue Service on the plaintiff's claim for refund, and the complaint in this action was filed on December 27, 1985.

## II.

The plaintiff asserts that as a tax exempt organization under Section 501(c)(7) of the 1954 Code, it is entitled to claim non-recognition under Section 512(a)(3)(D) of the income received due to the lapsed option on the 60 acres of land. Section 512(a)(3)(D) provides that

> If property used directly in the performance of the exempt function of an organization described in paragraph (7), (9), (17), or (20) of section 501(c) is sold by such organization, and within a period beginning 1 year before the date of such sale, and ending 3 years after such date, other property is purchased and used by such organization directly in the performance of its exempt function, gain (if any) from such sale shall be recognized only to the extent that such organization's sales price of the old property exceeds the organization's cost of purchasing the other property. For purposes of this subparagraph, the destruction in whole or in part, theft, seizure, requisition, or condemnation of property shall be treated as the sale of such property, and rules similar to the rules provided by

subsections (b), (c), (e) and (j) of section 1034 shall apply.

After a careful review of the material submitted in this case, this Court finds that Section 512(a)(3)(D) is inapplicable here and that the IRS correctly determined that the $50,000 option premium was unrelated business taxable income subject to the tax imposed by Section 511.

Section 512(a)(3)(D) provides for the non-recognition of gain on the sale of "property." In this case, the plaintiff received income from an option on the sale of property, and not from a sale of the property itself. I am not persuaded by the plaintiff's argument that Section 1234 of the Code governs in this case. Section 1234(a)(1) states that gain attributable to failure to exercise an option "shall be considered gain from the sale or exchange of property which has the same character as the property to which the option relates ... would have in the hands of the taxpayer if acquired by him." Section 1234(b)(1) provides that in the case of the grantor of an option on stock, securities or commodities, gain or loss "shall be treated as a gain or loss from the sale or exchange of a capital asset held not more than 6 months." The plaintiff contends that the provisions of Section 1234(a)(1), and the provisions of Section 1234(b)(1), which explicitly covers only options on stock, securities, and commodities, should be applied to its real estate option with Merchco, and that the gain resulting from the lapse of the option should be treated as gain arising from a "sale or exchange" of property.

As the defendant's reply memorandum notes, the plaintiff fails to recognize that Section 1234(a)(1) deals with the tax treatment accorded the sale or exchange, or a

---

empt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11) or (12) of subsection (b). For purposes of the preceding sentence, the deductions provided by sections 243, 244, and 245 (relating to dividends received by corporations) shall be treated as not directly connected with the production of gross income.

(B) Exempt function income.—For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid.

loss attributable to failure to exercise, options by taxpayers who are the *holders* of options. The matter before the Court involves the tax treatment of money received by the *grantor* upon the optionee's failure to exercise the option, and does not fall within the rubric of stock, securities, or commodities covered in section 1234(b)(1). In the case of a grantor of an option on real estate, the income received from the optionee's failure to exercise the options is better viewed as compensation "for the privilege of keeping an obligation open and the income he so realizes at cessation of the obligation is in no way attributable to a sale or other disposition." Rev.Rul. 63–183, 1963–2 C.B. 285, 286, *citing Mitchell v. Commissioner*, 48 F.2d 697 (2d Cir. 1931). This non-sale treatment with respect to the grantor of a lapsed option is also reflected in the Treasury Regulations, § 1.1234–1, which provide that

> In general any gain to the grantor of an option arising from the failure of the holder to exercise it, and any gain or loss realized by the grantor of an option as a result of a closing transaction, such as repurchasing the option from the holder, is considered ordinary income or loss.

Thus, the lapse of an option is to be treated as ordinary income to the grantor in the year of the lapse, and not as short-term capital gain resulting from a "sale."

Even if this Court were to indulge the plaintiff's expansive reading of Section 1234, it is not clear that the plaintiff has sufficiently demonstrated that the 60 acres of property in question was "property used directly in the performance of the exempt function" of the Club as required by Section 512(a)(3)(D). The stipulation of facts submitted by the parties refers to the 60 acres of land as "unused real estate." The defendant claims that the "land subject to the option was never used by the plaintiff at all." Defendant's Memorandum of Law, p. 9. The plaintiff, however, states that "the property subject to the option was land held directly for the provision of golfing facilities by a social club formed primarily to provide such facilities." Plaintiff's Memorandum of Law, p. 9.

Although the plaintiff may have purchased the original 120 acres of land with the intention of providing expanded golf facilities, the plaintiff never actually used the 60 acres in question for that purpose. The deposition of Thomas D. Burke, former Treasurer of the Club, indicates that up until January of 1986 the land "was in use for anything" and that the Club's greens keeper lived in a house on the property. Burke Deposition, p. 45. Burke also stated that "large equipment" was stored on the land. Burke Deposition, p. 43. This Court would hesitate to find, on the basis of this rather inconclusive deposition testimony, that the use of a home by the greens keeper and the storage of some "large equipment" directly facilitated the performance of the exempt function of the Club.

For the above stated reasons, the Court finds that the IRS properly determined the deficiency in the plaintiff's income tax for the taxable year 1982, and judgment is granted for the defendant.

SO ORDERED.