**UNITED STATES v. CORDY, Comptroller of Treasury of Maryland.**

**No. 1834.**

District Court, D. Maryland.

May 12, 1932.

Simon E. Sobeloff, U. S. Atty., and Cornelius Mundy, Asst. U. S. Atty., both of Baltimore, Md.

William Preston Lane, Jr., Atty. Gen. of Maryland, G. C. A. Anderson, Asst. Atty. Gen. of Maryland, for respondent.

WILLIAM C. COLEMAN, District Judge.

The question here involved is whether the state of Maryland may validly assess a gasoline tax (article 56, §§ 211–223, inclusive, Bagby's Annotated Code of Maryland) upon gasoline sold to the Post Exchange at Ft. George G. Meade, Md., a military reservation of the United States government.

The Maryland act imposes upon every dealer in the sale or use of motor vehicle fuel, as defined in the act, a so-called license tax of 4 cents per gallon. There are numerous administrative provisions of the act with which we need not be concerned. Suffice it to say that a dealer is defined by the act (section 211 (c) as "any person, firm or corporation who imports or causes to be imported gasoline and such other volatile and inflammable liquids produced or compounded for operating or propelling motor vehicles, as herein defined, for use, distribution or sale and delivery in, and after the same reaches, the State of Maryland. * * *" The same definition is made applicable also to any person, firm, or corporation producing, refining, manufacturing, or compounding such fuel in the state for use, distribution, or sale and delivery therein. The act further expressly provides, section

218, that it "shall not be imposed on motor vehicle fuel when exported or sold for exportation from the State of Maryland to any other State or nation, (whether in the form of a compound, or otherwise)," and in section 219A (Code Pub. Gen. Laws Supp. 1929) that "the Federal Government shall be entitled to the refund of the tax upon all motor vehicle fuel purchased by it with respect to which the tax has been paid, upon compliance with the provisions of Section 219 of this Article" (which relates to the method of applying for refunds).

It appears that the Post Exchange has paid the tax under protest on some of the sales, and, as to others, an amount equal to the tax alleged to be due is being withheld pending the determination in this suit as to whether or not any such tax may be legally exacted.

The grounds upon which the government bases its claim for exemption are, first, that the Post Exchange is a government instrumentality; and, second, that, since the gasoline in question sold to the Post Exchange was delivered by dealers to the Post Exchange located on the government reservation at Ft. George G. Meade, such amounted to interstate commerce, and that, therefore, gasoline so delivered is impliedly, if not expressly, exempt from taxation under the Maryland act.

The state of Maryland denies the soundness of these contentions. The suit, being one at law, is the proper form of action. Stratton v. St. Louis Southwestern Rwy. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. ——; Matthews et al. v. Rodgers et al., 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. ——; Miller v. Standard Nut Margarine Co. of Florida, 284 U. S. 478, 52 S. Ct. 260, 76 L. Ed. ——, and this court otherwise has jurisdiction. It is well settled that, where a suit is based upon unauthorized administration of a state law by a state official, such is not to be construed as a suit against the state itself. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362; 14 S. Ct. 1047, 38 L. Ed. 1014; Louisiana v. Texas, 176 U. S. 1, 20 S. Ct. 251, 44 L. Ed. 347. There is no allegation in the present pleadings, and, in fact, there is no contention on the part of the government, that the Maryland Gasoline Tax Act is itself unconstitutional, but merely that, in attempting to tax gasoline sold to the Post Exchange, the Comptroller of the Treasury of the State of Maryland is attempting to do something that is not authorized by the statute itself.

Army Post Exchanges are mediums established and maintained by army regulations, pursuant to statutory authority, for the convenience of both officers and enlisted men whereby, at reasonable cost to them, certain creature comforts in the way of clothing, food, etc., as well as recreation and amusement, not otherwise provided by regulations, may be secured. They were originally organized under General Orders No. 10, Adjutant General's Office, February 1, 1889; by the Act of January 28, 1893 (27 Stat. 426), and under regulations promulgated in 1895 (General Orders No. 46, Headquarters of the Army, July 25, 1895). They supersede the post traders and canteens, which in turn were the successors of the sutlers of the Revolutionary and later periods, through the Civil War period.

Thus there is squarely raised by the first contention of the government a question of fact as to whether or not the Post Exchange at Ft. George G. Meade is in law an instrumentality of the federal government. If it is, and if, as the government also contends, the Maryland tax, with respect to the gasoline sold to the Post Exchange is, both in character and effect, similar to that involved in Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, it must follow that the government's contention should prevail. In the Panhandle Oil Co. Case, the state of Mississippi imposed upon distributors and retail dealers in gasoline, for the privilege of engaging in the business, an excise tax upon every gallon of gasoline sold in the state. The oil company, a dealer, was sued by the state for certain sums due under the tax statute, and resisted payment with respect to sales made by it to the United States government for the use of the Coast Guard and Veterans' Hospital in Mississippi. The Supreme Court sustained the claim to exemption on the ground that the necessary effect of the tax was directly to retard, impede, and burden the exercise by the United States of its constitutional powers to carry on government instrumentalities.

It is axiomatic in statutory construction that, where there is doubt as to a law's constitutionality, if it is reasonably susceptible of different constructions, that one which saves the constitutionality of the law should be adopted. United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836; Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906. But we do not consider it necessary to decide in the present instance the question

whether the Post Exchange is in fact a government instrumentality, because we believe that the levying of the tax against sales to the Post Exchange is not within either the express or implied meaning of the tax act itself.

We have already pointed out that the statute expressly provides that the tax "shall not be imposed on motor vehicle fuel when exported or sold for exportation from the State of Maryland to any other State or nation. * * *" Section 218. While federal territory is not mentioned in this provision, we believe that it is proper to say that it must be so included by implication. But, in addition, we believe that the express language of Section 211 (c) is of itself sufficient to indicate that it was not intended that the tax should apply to sales such as those here involved. As we have seen, that section defines a dealer as any person, firm, or corporation importing gasoline "for use, distribution or sale *and delivery in*, and after the same reaches, the State of Maryland. * * *" (Italics inserted.) All of the gasoline was purchased from one or more dealers within the state of Maryland, and then delivered by such dealers, in their own motor tank trucks, to the Post Exchange. That is to say, the delivery was not made within the state of Maryland, which is a prerequisite for the application of the tax, in addition to use, distribution, or sale within the state.

It is not, nor can it be reasonably contended, that Ft. George G. Meade is other than exclusively federal territory. It was acquired by the United States pursuant to article 1, § 8, cl. 17, of the Constitution, whereby Congress is given power to exercise exclusive jurisdiction over all territory purchased by the consent of the Legislature of the state of which it formed a part, in aid of the military arm of the government. The Maryland Legislature consented to the acquisition of the Ft. George G. Meade reservation by the United States (Bagby's Annotated Code, article 96, §§ 19 and 31), and ceded exclusive jurisdiction over it (Bagby's Annotated Code, article 96, § 32).

It follows necessarily from what has been said that we need not consider the second point contended for by the government; namely, that the tax, if permitted to be assessed, would be an unconstitutional burden upon interstate commerce.

The verdict must therefore be in favor of the government, for the sums claimed.