## UNITED STATES v. QUERY et al.
### No. 932.

District Court, E. D. South Carolina.
Dec. 21, 1937.

James W. Morris, Asst. Atty. Gen., and Robert N. Anderson and W. Croft Jennings, Sp. Assts. to the Atty. Gen. (Claud N. Sapp, U. S. Atty., and Henry H. Edens, Asst. U. S. Atty., both of Columbia, S. C., and Ed. C. Betts, Major, U. S. Army, Judge Advocate General's Department, of Washington, D. C., of counsel), for the United States.

John M. Daniel, Atty. Gen., and Claude K. Wingate, of Columbia, S. C., for defendants.

Before PARKER, Circuit Judge, and MYERS and WYCHE, District Judges.

WYCHE, District Judge.

This is a suit in equity brought by the United States to enjoin the South Carolina Tax Commission from collecting taxes imposed by an Act of the General Assembly of South Carolina, as amended, sections 2521–2554 inclusive, Code of Laws of South Carolina 1932, and from enforcing other provisions contained therein, with respect to the activities of Civilian Conservation Corps camp exchanges within the borders of the state, upon the ground that the taxing statute, as applied, infringes the Federal Constitution.

A District Court of three judges, organized in accordance with section 266 of the Judicial Code, as amended, 28 U.S.C.A. § 380, heard the case on plaintiff's application for interlocutory and permanent relief. At the hearing the cause was submitted on stipulation of facts, and it was agreed that the hearing should be on the merits for a final decree.

The state statute imposes a license tax upon the privilege of engaging in the business of selling within the state, certain articles, such as little cigars, cheroots, stogies, cigars, cigarettes, snuff, chewing tobacco, smoking tobacco, cartridges and shells, candy, playing cards. To engage in such business requires a license to be obtained by application to the South Carolina Tax Commission. The statute further provides: That a separate license be secured for each place of business operated; that any license issued thereunder may under certain conditions be revoked by South Carolina Tax Commission; that any of the enumerated articles declared to be subject to tax shall, upon a failure to conform to the mandates of the statute, be contraband and subject to seizure and confiscation; that any vehicle, not a common carrier, which may be used for the transportation, for the purpose of sale, of said articles not bearing stamps indicating the payment of the tax, shall likewise be subject to seizure and confiscation; that every person engaged in selling, manufacturing, or otherwise dealing in various commodities known as "soft drinks," shall, for the privilege of carrying on such business, be subject to the payment of a license tax measured by and graduated in accordance with the sales of such person; the payment of said license tax shall be made through the medium of soft drink license tax stamps affixed to the containers bearing the syrup utilized in the making of soft drinks and soft drink license tax crowns affixed to the containers bearing the finished drink suitable for human consumption; that every such person dealing in said soft drinks shall prepare and maintain complete records revealing an accurate account of the transactions incident to such dealing in soft drinks for a period of not less than two years from the date of each such transaction. The commission has the power of seizure and confiscation of commodities held and used in dealing in soft drinks by such person failing to comply with the requirements of the statute.

The statute Code S.C.1932, § 2526, further provides that the administration and enforcement of the act is vested in the South Carolina Tax Commission, which shall prescribe rules and regulations pertinent to the enforcement of the statute, and that said commission shall have power to enter upon the premises of any taxpayer and examine, through its agents, any books, papers, records, memoranda, or commodities bearing upon the amount of taxes payable, and to secure any other information concerned in the enforcement thereof; that violations thereof shall constitute public offenses and are punishable by divers and numerous fines, penalties, or imprisonment. Each separate act of violation of the statute is specified as a separate and independent offense.

The Civilian Conservation Corps camp exchanges, located within the borders of the state of South Carolina, are now and have been engaged in selling a number or all of the articles enumerated in the statute, as being subject to a license tax, and the sales are and have been consummated on property either owned or leased by the United States.

The plaintiff contends that the institution of the Civilian Conservation Corps camp exchange is such an instrumentality of the federal government as to be immune from state taxation, regulation, or interference.

The Civilian Conservation Corps camp exchange is a governmental undertaking. It has its existence by virtue of Congressional legislation, Act June 28, 1937, 16 U.S.C.A. § 584 et seq. Federal funds are used to pay the expenses in connection with its conduct, operation, and management. Act June 28, 1937, § 17, 16 U.S.C.A. § 584p. The federal statute creating the camp exchange provides that it be established and operated in accordance with regulations prescribed by the Director, at the camps designated by him. Section 17, Act June 28, 1937, 16 U.S.C.A. § 584p. The camp exchanges in South Carolina were established in pursuance thereof. The camp exchange is an integral and necessary part of the Corps which is engaged in providing employment as well as vocational training to unemployed citizens of the United States for the performance of useful work and in salvaging and conserving the natural resources of the United States. Such a function of the government is au-

thorized under article 1, § 8, cl. 1, of the Federal Constitution. A high state of morale and contentment is necessary to a full consummation of the objectives of the Corps, to create and maintain which the institution of the camp exchange was established as an essential element of the program for unemployment relief. It is operated in a building erected and maintained by federal funds on lands privately owned, but leased for a specified term by the United States. It was not created for private gain, but wholly for governmental purposes. It is not conducted primarily for profit, but is operated essentially for the welfare of the camp's enrollees in furtherance of the objectives of the Corps. Sales to outsiders are strictly prohibited by the statute creating the camp exchange. It follows that the Civilian Conservation Corps camp exchange is a federal instrumentality.[1] New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306; Johnson v. Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126; Graves v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236; Panhandle Oil Co. v. Knox, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583; Ohio v. Thomas, 173 U. S. 276, 19 S.Ct. 453, 43 L.Ed. 699; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L. Ed. 328; Shaw v. Oil Corporation, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709; United States v. Wright, 4 Cir., 53 F.2d 300.

■ It is well settled that the instrumentalities, means, and operations employed by the United States in the exercise of its governmental powers are exempt from tax, regulation, or interference by the states, and that the instrumentalities, means, and operations whereby the states exercised their governmental powers are exempt from tax, regulation, or interference by the United States. What instrumentalities of a state or the federal government are immune from tax, regulation, or interference by the other has never been stated in terms decisive of every case, but the Supreme Court in its numerous decisions upon the question has announced certain principles whereby this case must be tested.

Thus, the Supreme Court in the case of Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 174, 70 L.Ed. 384, said: "Neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (South Carolina v. United States, 199 U.S. 437, 461, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737; Flint v. Stone Tracy Co., supra, [220 U.S. 107] at page 172, 31 S.Ct. 342 [55 L.Ed. 389, Ann. Cas.1912B, 1312]) or the appropriate exercise of the functions of the government affected by it. Union P. Railroad Co. v. Peniston, supra, [18 Wall. 5] 31 [21 L.Ed. 787]."

An examination of the state statute discloses that it requires each establishment to secure a license to do business issued at the discretion of the Tax Commission revocable by it under certain conditions. It permits the seizure and confiscation of the articles taxed for failure to comply with the provisions of the statute, or the rules and regulations promulgated by the Tax Commission. It authorizes the seizure of vehicles transporting alleged contraband articles. Any violation of the provisions of the statute or the rules and regulations subjects the dealer to a suppression of his business. Under such provisions of the statute the state is granted not only the power to curtail in a substantial manner

---

[1] President's message to Congress March 2, 1933; Presidential Executive Order No. 6101, 16 U.S.C.A. § 585 note; Public Resolution No. 50, 75th Congress, 1st Session, approved July 1, 1937, c. 425; Hearings before Committee on Education and Labor United States Senate on Bill to establish Civilian Conservation Corps, April 9th and 13th, 1937; same before House Committee April 14th and 15th, 1937; Dugan v. United States, 34 Ct.Cl. 458; Woog v. United States, 48 Ct.Cl. 80; Post Exchange v. Kinney (No. 30920 Sup.Ct. Philippine Islands promulgated by Johnson, Jr., August 28, 1929); United States v. Cordy, D.C., 58 F.2d 1013; United Auto Transportation Co. v. Castner (W.D.Wash.), January 7, 1930 (unpublished); United States v. Macdaniel, 7 Pet. 1, 8 L.Ed. 587; 21 Comp.Dec. 109; 3 Comp.Gen. 518, Circular 48, W.D., 1933; 22 Op.Atty.Gen. 426, 428; Executive Order 6390, Feb. 6, 1934. See 5 U.S.C.A. § 132 note; Ruling Acting Deputy Commissioner of Internal Revenue, Treasury Department, July 25, 1934; United States v. Owlett, 15 F.Supp. 736, 742, D.C.Pa.

the exercise of power by the federal government in the operation of the camp exchange, but is also given the authority to destroy the effect of the federal statute creating the camp exchange and to suppress a part of its business.

No reason is advanced and none occurs to us why the operation of the camp exchange as a federal instrumentality without the payment of the license tax imposed by the state statute should in any manner seriously impair the taxing power of the state government, but on the other hand, it conclusively appears that the enforcement of the provisions of the state statute might seriously hamper the operation of the camp exchange.

In the Metcalf & Eddy v. Mitchell Case, the Supreme Court further declared: "[The origin of the rule] was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other." It has been pointed out that the Civilian Conservation Corps camp exchange is authorized by congressional legislation enacted in pursuance of the authority granted by article 1, § 8, cl. 1, of the Federal Constitution. The federal statute directs the institution of camp exchanges within the territorial limits of the different states in furtherance of the objects of the legislation establishing the Corps. The statute prescribes that the camps must be operated in pursuance of regulations made by the Director. Such regulations have the force and effect of law.[2] The defendants contend that under the South Carolina statute the camp exchanges must be operated in pursuance of regulations promulgated by the South Carolina Tax Commission and in conformity with the mandates of the state statute. These regulations conflict. The state statute necessitates the maintaining of extensive records sufficient to satisfy rules and regulations of the Tax Commission. The rules and regulations of the federal Director require records to be kept in compliance with their provisions. State statute permits the officers and agents of the Tax Commission to enter upon the premises of the taxpayer and examine the books and records. The rules and regulations of the Director require systematic audits in accordance with his regulations. The federal government is attempting to administer its affairs within its sphere by its instrumentality, the camp exchange, through its rules and regulations. The defendants contend that the federal government must operate its camp exchange in accordance with the state statute and the rules and regulations therein authorized, and this does not leave the federal government free from undue interference by the state in the operation of one of its agencies created by constitutional authority.

The powers placed in the hands of the Tax Commission by the state statute, under the contention of defendants, would give the commission supervisory authority over an agency beyond its control, and as that agency is one of federal character the state power must defer; the conflict must be resolved in favor of the federal government.

In the Metcalf & Eddy Case, the Supreme Court made this further pronouncement: "In one aspect the extent of the exemption must finally depend upon the effect of the tax upon the functions of the government alleged to be effected by it, still the nature of the governmental agencies or the mode of their constitution may not be disregarded in passing on the question of tax exemption; for it is obvious that an agency may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power."

In performing its constitutional functions, the United States must operate through an instrumentality or agency. Here it operates through the agency of the camp exchange as an integral part of the Civilian Conservation Corps. The tax falls directly upon the camp exchange and the provisions of the state statute directly affect this instrumentality of the federal government selected for the exercise of its powers. The state tax in effect is upon the government's transactions in the exercise of its lawful power. The Civilian Con-

---

[2] Caha v. United States, 152 U.S. 211, 221, 14 S.Ct. 513, 38 L.Ed. 415; Gratiot v. United States, 4 How. 80, 111, 11 L. Ed. 884; Kurtz v. Moffitt, 115 U.S. 487, 503, 6 S.Ct. 148, 29 L.Ed. 458; United States v. Eliason, 16 Pet. 291, 302, 10 L.Ed. 968; United States v. Freeman, 3 How. 556, 566, 11 L.Ed. 724.

servation Corps camp exchange is of such a character and so intimately connected with the exercise of the operation of the Civilian Conservation Corps, the exercise of a power granted by the Act of Congress authorized by the Federal Constitution, that it is such a direct interference with the functions of the government itself as to be clearly beyond the taxing power of the state.

In the case of Shaw v. Oil Corporation, 276 U.S. 575, 48 S.Ct. 333, 334, 72 L.Ed. 709, the Supreme Court announced this principle: "What governmental instrumentalities will be held free from state taxation, though Congress has not expressly so provided, cannot be determined apart from the purpose and character of the legislation creating them." Applying this pronouncement, the Supreme Court in that case said: "The end sought and the mode of attaining it adopted by Congress in the legislation providing for the welfare of the Indians by setting apart, by allotment or otherwise, tribal lands or the public domain, restricted for their benefit, led to the conclusion that those lands and the uses of them were so intimately connected with the performance of governmental functions as clearly to require independence of all state control so complete that nothing short of an express declaration by Congress would have subjected them to state taxation."

It may, with equal logic, be said that the end sought and the mode of attaining it adopted by Congress in the legislation providing for the welfare of the unemployed by the establishment of Civilian Conservation Corps camps and directing that the Corps take over the institution of camp exchanges theretofore established and maintained under the supervision of the War Department in connection with aiding in the administration of the Civilian Conservation Corps work camps and prohibiting such camp exchanges from selling to persons not connected with the operation of the Civilian Conservation Corps, thus restricting the operation of the camp exchanges for the benefit of the enrollees, leads to the conclusion that the establishment of Civilian Conservation Corps and its camp exchanges was so intimately connected with governmental functions as clearly to require independence of all state control so complete that nothing short of an express declaration of our Congress would subject them or their operations to taxation. In the one case the legislation

was for the benefit of the Indians; in the other, the legislation was for the benefit of the unemployed. This conclusion is also sustained by the Supreme Court in the cases of United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; and United States v. Wright, 4 Cir., 53 F.2d 300, certiorari denied 285 U.S. 539, 52 S.Ct. 312, 76 L.Ed. 932. In the Rickert Case the Supreme Court had for consideration whether lands held by Indian allottees were subject to taxation by South Dakota. There the lands in question were ceded by the Sisseton Sioux Indians to the United States in consideration for allotments thereof and patents thereto from the United States under the Indian Land Allotment Act. The court held, 188 U.S. 432, at pages 437, 439, 23 S.Ct. 478, 47 L.Ed. 532, that an agency exercising a trust created by lawful authority for the exercise of a federal power was beyond the taxing jurisdiction of a state; that the lands were held by the United States in execution of its plans respecting Indians, without the right in them to do more with respect to those lands than the federal government permitted; that the Indians were wards of the United States and occupied the lands with the consent and authority of the United States as a part of its national policy by which the Indians were to be maintained and prepared for usefulness as citizens; that to tax these lands was to tax an instrumentality employed by the United States for the benefit and control of this dependent race, and utilized to accomplish beneficent objects with reference to a people it owed a duty to protect and for which it had the power.

The Supreme Court early declared in the case of McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L.Ed. 579, that: "The States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government."

The effect of the state statute is to control the operations of the camp exchanges by rules and regulations promulgated by the State Tax Commission, and by the provisions of the statute itself. The transactions within the purview of the statute cannot be carried on without procuring a license from the state. Wingfield v. South Carolina Tax Commission, 147 S.C. 116, 144 S.E. 846.

The tax imposed is a license tax and not a property one; being an excise tax it is laid on the enjoyment of a privilege, and in the case at bar falls upon the means by which the federal government undertakes to perform its lawful function. The state statute places within the hands of the Tax Commission the power to retard, impede, and burden the operation of the Civilian Conservation Corps camp exchange. The slightest degree of such interference or burden is prohibited. Indian Motocycle Co. v. United States, 283 U.S. 570, at page 575, 51 S.Ct. 601, 602, 75 L.Ed. 1277; Trinityfarm Const. Co. v. Grosjean, 291 U.S. 466, 471, 54 S.Ct. 469, 470, 78 L.Ed. 918.

The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission, but it does not extend to those means and instrumentalities which are employed by the Congress to carry into execution powers conferred upon that body by the people of the United States. Van Brocklin v. Anderson, Van Brocklin v. Tennessee, 117 U.S. 151, 155, 6 S.Ct. 670, 29 L.Ed. 845.

For the foregoing reasons, we are forced to the conclusion that plaintiff is entitled to the injunction prayed.